IN THE SUPREME COURT OF NORTH CAROLINA

No. 159A19

Filed 24 January 2020

IN THE MATTER OF: C.J.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 14 January 2019 by Judge Sarah C. Seaton in District Court, Onslow County. This matter was calendared in the Supreme Court on 17 January 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Richard Penley for petitioner-appellee Onslow County Department of Social Services.*

*Michelle FormyDuval Lynch, GAL Appellate Counsel, for appellee Guardian ad Litem.*

*Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender J. Lee Gilliam, for respondent-appellant mother.*

BEASLEY, Chief Justice

Respondent-mother appeals from an order entered by the trial court terminating her parental rights to her daughter, Chloe.[1] After careful consideration of respondent-mother's challenges to the trial court's conclusion that grounds exist to terminate her parental rights to Chloe, we affirm the trial court's order.

---

[1] We refer to the minor child throughout this opinion as "Chloe," which is a pseudonym used to protect the identity of the child and for ease of reading.

On 21 October 2014, the Onslow County Department of Social Services (DSS) obtained nonsecure custody of Chloe and filed a petition alleging she was a neglected and dependent juvenile. DSS alleged respondent-mother had been arrested in Georgia and extradited to Mississippi to face charges involving drug trafficking and stolen weapons. Respondent-mother's boyfriend had taken Chloe from her school in Georgia and moved with her to Jacksonville, North Carolina. The boyfriend was subsequently arrested on charges from Georgia, and Chloe was placed with his relatives. DSS deemed the placement inappropriate and learned that a Georgia department of social services had an open case involving respondent-mother and her alleged use of Chloe to obtain prescription medication. Chloe's father was incarcerated in Mississippi on a drug-related conviction and had a projected release date of 25 January 2016.[2]

After a hearing on 14 January 2015, the trial court entered an adjudication and disposition order on 24 April 2015, which it amended by order entered 16 September 2015. The court concluded Chloe was a dependent juvenile and continued custody of Chloe with DSS. The court ordered respondent-mother to participate in therapeutic intervention, including diagnostic assessment and testing, and follow all recommendations; to complete a substance abuse assessment and follow all recommendations; to complete drug screens as requested by DSS; to obtain and

---

[2] Chloe's father subsequently died on 19 August 2017 and was not a party to the termination of parental rights proceeding.

maintain verifiable employment; to obtain and maintain stable housing suitable for Chloe; and to maintain communication with DSS. The court also granted respondent-mother supervised visitation with Chloe for one hour every other week.

By order entered 15 June 2015, the trial court set the primary permanent plan for Chloe as reunification and the secondary plan as custody with a court-approved caretaker. On 5 December 2016 the court changed the permanent plan to guardianship, with a secondary concurrent plan of reunification, after finding that respondent-mother remained in Mississippi and had not provided DSS or the court with any evidence that she had participated in her case plan. Over the next several months, respondent-mother continued to fail to show progress toward meeting the goals of her case plan. The court ordered DSS to cease reunification efforts on 3 January 2017, and, by order entered 1 June 2018, the trial court set the primary permanent plan for Chloe as adoption and the secondary plan as guardianship.

DSS filed a petition to terminate respondent-mother's parental rights on 29 August 2018, alleging grounds of neglect, willfully leaving Chloe in foster care for more than twelve months without making reasonable progress to correct the conditions that led to her removal, willfully failing to pay a reasonable portion of the cost of care for Chloe during her placement in DHHS custody, dependency, and abandonment. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (6), (7) (2017). After a hearing on 13 December 2018, the trial court entered an order terminating respondent-mother's parental rights to Chloe on 14 January 2019. The trial court found and concluded

respondent-mother's parental rights were subject to termination based on the grounds of neglect, willfully leaving Chloe in foster care for more than twelve months without making reasonable progress to correct the conditions that led to her removal, and abandonment. The trial court further concluded termination of respondent-mother's parental rights was in Chloe's best interests. Respondent-mother filed timely notice of appeal to this Court from the trial court's order.

Respondent-mother first challenges four of the trial court's findings of fact as unsupported by clear, cogent, and convincing evidence. However, the challenged findings are not necessary to support the trial court's conclusion that respondent-mother willfully left Chloe in foster care for more than twelve months without making reasonable progress to correct the conditions that led to her removal, and they need not be reviewed on appeal. *See In re T.N.H.*, 831 S.E.2d 54, 58–59 (2019) ("[W]e review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982))).

Respondent-mother also argues the trial court erred in concluding she willfully left Chloe in foster care for more than twelve months without making reasonable progress to correct the conditions that led to her removal, because the conditions relied upon by the court to support this conclusion did not directly "lead" to Chloe's removal. Respondent-mother contends the only condition that directly led to Chloe's removal was her potential lengthy incarceration in Mississippi, which she claims to

have remedied. This Court has recently rejected a similar argument, holding a trial court's conclusion on this ground is supported where there exists a "nexus between the components of the court-approved case plan with which respondent-mother failed to comply and the 'conditions which led to [the juvenile's] removal' from the parental home." *In re B.O.A.*, 831 S.E.2d 305, 314 (2019).

In its initial adjudication and dispositional order, the trial court found Chloe was removed because respondent had left her in the care of her boyfriend after she was arrested and extradited to Mississippi to face criminal charges involving drug-trafficking and stolen weapons. At the time of Chloe's removal, a Georgia department of social services had an open case involving allegations that respondent-mother had used Chloe to obtain prescription medication. The court further found respondent-mother had a history with Child Protective Services in Mississippi involving allegations of inappropriate care, sexual abuse of a child by a caretaker or family friend, exposure of a child to illegal substances, and inappropriate discipline. Respondent-mother's demeanor at a hearing in this case led the court to be concerned that she may have been under the influence when she testified and may have been suffering from a mental health condition. These findings establish the required nexus between the components of respondent-mother's court-approved case plan and the overall conditions that led to Chloe's removal.

In its order terminating respondent-mother's parental rights, the trial court found respondent-mother failed to address any component of her court-ordered case

plan and had not visited with Chloe since January 2015. These findings are supported by clear, cogent and convincing evidence that respondent-mother failed to maintain contact with DSS while Chloe was in the department's custody or to participate in court-ordered visitation, to verifiably participate in substance abuse assessment or drug screenings, or to maintain housing and employment stability. The trial court's findings fully support its conclusion that grounds exist to terminate respondent-mother's parental rights to Chloe under N.C.G.S. § 7B-1111(a)(2) because she willfully left Chloe in foster care for more than twelve months without making reasonable progress to correct the conditions that led to Chloe's removal from her care. *See In re B.O.A.*, 831 S.E.2d at 314–16.

The trial court's conclusion on this ground "is sufficient in and of itself to support termination of [respondent-mother's] parental rights[,]" *In re T.N.H.*, 831 S.E.2d at 62, and we need not address her arguments challenging the remaining grounds. Respondent-mother does not challenge the trial court's conclusion that termination of her parental rights is in Chloe's best interests. Accordingly, we affirm the trial court's order terminating respondent-mother's parental rights to Chloe.

AFFIRMED.