IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-52

No. 332A20

Filed 23 April 2021

IN THE MATTER OF: M.S.A.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 6 February 2020 by Judge Jimmy L. Myers in District Court, Davidson County. This matter was calendared in the Supreme Court on 19 March 2021, but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief filed for petitioner-appellee.*

*Edward Eldred for respondent-appellant father.*

MORGAN, Justice.

¶ 1    Respondent-father appeals from the trial court's order terminating his parental rights to his minor child, M.S.A. (Mary[1]). In his sole argument on appeal, respondent-father asserts that his voluntary lack of communication with Mary from the inception of the period of his incarceration in November 2012 through the December 2019 private termination of parental rights hearing could not serve as a basis for the trial court's conclusion that grounds existed to terminate his parental rights due to abandonment under N.C.G.S. § 7B-1111(a)(7) because the trial court did

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

not find, nor does the evidence support a finding, that respondent-father's failure to contact Mary was willful. Because we conclude that clear, cogent, and convincing evidence is contained in the record to show that respondent-father admittedly ignored his ability to contact his daughter or her caretaker, we affirm the termination order.

## I. Factual and Procedural Background

¶ 2        This private termination action began on 12 December 2018 when petitioner, who is Mary's maternal great, great aunt, filed a petition seeking to terminate the parental rights of both of Mary's parents.[2] On 1 March 2019, petitioner filed an amended petition alleging that Mary had resided with her continuously from October 2010 until the filing of the petition, and that she had exercised sole legal and physical custody of Mary since June 2011. Petitioner claimed that she had provided for Mary's financial, medical, emotional, and physical needs during this time of Mary's habitation with petitioner, and that petitioner would continue to be able to do so. Petitioner further alleged that respondent-father was incarcerated at the time of the filing of the petition, that he had not visited with or seen Mary since 2011, and that he had not provided financial support nor sent any gifts or correspondence to Mary for at least five years. Petitioner filed her action in order to seek the termination of the parental rights of respondent-father on the basis of willful abandonment under N.C.G.S. § 7B-1111(a)(7) (2019). Respondent-father filed an answer denying

---

[2] Mary's mother is not a party to this appeal.

petitioner's material allegations.

¶ 3    The petition was heard during the 19 December 2019 session of District Court, Davidson County. Respondent-father did not contest petitioner's allegations that he had previously demonstrated the ability to communicate with Mary's mother and family members while incarcerated[3], but offered testimony that he did not possess actual knowledge of the information that he needed to reach Mary or petitioner. On 6 February 2020, the trial court entered an order terminating respondent-father's parental rights, concluding that respondent-father had willfully abandoned Mary pursuant to N.C.G.S. § 7B-1111(a)(7) and that termination of respondent-father's parental rights was in Mary's best interests. Respondent-father appeals the trial court's order, asking this Court to decide "whether an incarcerated parent who has not had contact with his child for eight years and does not know how to contact his child may lose his parental rights on the ground of abandonment."

## II.    Analysis

---

[3] Respondent-father takes exception with the trial court's finding that he was also in regular contact with his attorney, arguing that he had simply testified that he knew how to get in contact with his attorney while incarcerated. Such an admission would appear to be detrimental to respondent-father's contention that the evidence in the record could not establish his ability to contact Mary or petitioner, as it appears that respondent-father knew how to contact a person who presumably possessed the wherewithal to obtain and relay the information to respondent-father which was necessary to contact Mary and petitioner. As explained below, however, this contested finding by the trial court is unnecessary to support the trial court's ultimate conclusion and is therefore excluded by us from any consideration.

The North Carolina General Statutes set forth a two-step process for the termination of parental rights. After the filing of a petition for the termination of parental rights, a trial court conducts a hearing to adjudicate the existence or nonexistence of any grounds alleged in the petition as set forth in N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e) (2019). The petitioner carries the burden of proving by clear, cogent, and convincing evidence that grounds exist under N.C.G.S. § 7B-1111(a) to terminate a respondent-parent's parental rights. *In re A.U.D.*, 373 N.C. 3, 5–6, (2019). Upon an adjudication that at least one ground exists to terminate the parental rights of a respondent-parent, the trial court will then decide whether terminating the parental rights of the respondent-parent is in the child's best interests. N.C.G.S. § 7B-1110(a).

N.C.G.S. § 7B-1111(a)(7) states, in pertinent part, that the court may terminate parental rights upon a finding that the parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition. The only argument being voiced by respondent-father on this appeal concerns the trial court's adjudication that respondent-father *willfully* abandoned Mary. He contends that the trial court's findings of fact do not support its ultimate conclusion of law that he willfully abandoned Mary pursuant to N.C.G.S. § 7B-1111(a)(7).

When reviewing the trial court's adjudication of the existence of a ground to

terminate the parental rights of a respondent-parent, we examine whether the trial court's findings of fact "are supported by clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). Any factual findings of the trial court left unchallenged by an appellant are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, (2019). We review the trial court's conclusions of law under a de novo standard. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

¶ 7        Section 7B-1111(a)(7) permits the trial court to terminate a parent's rights when that "parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." *Id*. "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re B.C.B.*, 374 N.C. 32, 35 (2020) (quoting *In re Young*, 346 N.C. 244, 251 (1997)). We have held that abandonment is evident when a parent "withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance[.]" *Pratt v. Bishop*, 257 N.C. 486, 501 (1962). "Although the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re*

*N.D.A.*, 373 N.C. 71, 77 (2019) (quoting *In re D.E.M.*, 257 N.C. App. 618, 619 (2018)).

¶ 8 Respondent-father does not challenge the trial court's findings of fact which reflect that respondent-father "has never written letters," has never "sent gifts or cards," has never "provided financially" for Mary, and has never contacted petitioner "to inquire as to [Mary]'s well-being . . ." from the time of his incarceration in November 2012 until the filing of the amended termination petition on 1 March 2019. Nor does respondent-father dispute the trial court's findings that respondent-father had neither "made an effort to ensure that he has a relationship with the minor child," nor "reached out to [p]etitioner to inquire as to the minor child's well-being since the minor child came into [p]etitioner's custody." Instead, respondent-father contends that the trial court's remaining findings of fact do not establish the willfulness of the total nonperformance of his parental duties toward Mary, both during the relevant six-month period and in prior years.

¶ 9 In two respects, respondent-father contests the following portion of the trial court's Finding of Fact 14, which he considers to be the linchpin of the trial court's willfulness determination:

> While incarcerated, [r]espondent/father has always had the resources and ability to contact outside individuals, either through writing letters or by telephone. In fact, respondent/father stays in frequent contact with his family members and lawyers and has been in contact with respondent/mother. Respondent/father has never asked these individuals to assist him in getting in contact with Petitioner to inquire as to the minor child's well-being, nor

has he asked for their help in maintaining a relationship
with the minor child, despite having opportunities to do so.

First, respondent-father argues that he was not in "frequent contact" with his lawyers and that he had not contacted Mary's mother since 2012. Second, respondent-father contends that it is untrue that he *never* asked any family member for petitioner's contact information, as he testified at the hearing that he asked petitioner's sister for petitioner's telephone number and "she wouldn't give [respondent-father] that." However, respondent-father concedes that Finding of Fact 14 is otherwise accurate to the extent that it shows that he "was in frequent contact with *some* of his family members and never asked those family members to help him contact [petitioner]." Respondent-father's further admission that "he wrote [the mother] one letter in 2012 and did not hear back from [the mother]" is susceptible to the reasonable interpretation reflected in the trial court's finding that "[r]espondent-father ha[d] been in contact with respondent[-]mother." Further, although respondent-father offered uncontested testimony that he asked petitioner's sister for the telephone number of petitioner in 2012, nevertheless this evidence does not dilute the veracity of the portion of the trial court's Finding of Fact 14 that respondent-father had "never asked these individuals to assist him in getting in contact with [p]etitioner *to inquire as to the minor child's well-being*." A thorough analysis of the application of the provisions of N.C.G.S. § 7B-1111(a)(7) regarding the ground of abandonment to Finding of Fact 14 illustrates that respondent-father admits the validity of several of

the circumstances which the trial court determined in the finding and that respondent-father's strongest example to support his interest in contacting petitioner—the request for her telephone number—occurred years outside of the determinative six-month statutory period. Respondent-father's assertions are largely irrelevant to the gravamen of the ground of abandonment as to whether he manifested a "willful determination to forego all parental duties and relinquish all parental claims to the child." *In re B.C.B.*, 374 N.C. at 35.

¶ 10        This Court limits its "review to those challenged findings that are necessary to support the trial court's determination that . . . parental rights should be terminated[.]" *In re N.G.*, 374 N.C. 891, 900 (2020). Thus, even after disregarding the remaining segment of the trial court's Finding of Fact 14 which is vigorously disputed by respondent-father that he "stays in frequent contact with his . . . lawyers," the remainder of the trial court's finding amply supports its conclusion that respondent-father willfully abandoned Mary.

¶ 11        Respondent-father claims that, even though he "had the ability to contact people on the outside and that he did not ask those people to help contact [petitioner]," it does not follow that he willfully abandoned Mary. This assertion suggests that respondent-father is introducing his incarceration as a mechanism by which to absolve his parental duty toward Mary and to allow him therefore to refrain from undertaking the effort to pursue parental involvement with Mary through contact

with those persons with whom he communicated during his incarceration. We have

previously rejected such representations which respondent-father appears to foment:

> Incarceration, standing alone, is neither a sword nor a
> shield in a termination of parental rights decision.
> Although a parent's options for showing affection while
> incarcerated are greatly limited, a parent will not be
> excused from showing interest in the child's welfare by
> whatever means available.

*In re C.B.C.*, 373 N.C. at 19–20 (quoting *In re D.E.M.*, 257 N.C. App. 618, 621 (2018))

(extraneity omitted).

¶ 12      Here, it is undisputed that respondent-father, at a minimum, possessed the

ability to seek Mary's contact information from his relatives but declined to do so for

a number of years. The trial court's unchallenged findings reflect that respondent-

father did not utilize "whatever means available" to display his interest in Mary's

welfare during his incarceration. *In re C.B.C.*, 373 N.C. at 19–20. Instead,

respondent-father withheld his love, care, and filial affection from Mary, both in the

statutorily relevant six-month period prior to the filing of the petition to terminate

parental rights and in the years preceding that time span. *See Pratt*, 257 N.C. at 501.

As this constitutes willful abandonment, the trial court did not err in adjudicating

the existence of this ground pursuant to N.C.G.S. § 7B-1111(a)(7) in terminating

respondent-father's parental rights.

### III.   Conclusion

Based on the foregoing, we conclude that the trial court properly determined that the parental rights of respondent-father were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(7). Respondent-father does not challenge the trial court's conclusion that termination of his parental rights was in Mary's best interests. Consequently, we affirm the trial court's order terminating respondent-father's parental rights.

AFFIRMED.