IN THE SUPREME COURT OF NORTH CAROLINA

No.92A19

Filed: 16 August 2019

IN THE MATTER OF: T.N.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 17 December 2018 by Judge Monica Bousman in District Court, Wake County. This matter was calendared in the Supreme Court on 1 August 2019 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Office of the Wake County Attorney, by Mary Boyce Wells, for petitioner-appellee Wake County Human Services.*

*Everett Gaskins Hancock LLP, by Katherine A. King, for appellee Guardian ad Litem.*

*Mercedes O. Chut for respondent-appellant mother.*

EARLS, Justice.

Respondent mother appeals from the trial court's order terminating her parental rights to T.N.H. (Troy).[1] We affirm.

On 24 September 2015, Wake County Human Services (WCHS) obtained non-secure custody of Troy and his sister, T.B.,[2] after receiving reports of alleged domestic

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading. *See* N.C. R. App. P. 42(b)(1).

[2] Respondent's parental rights to T.B. were terminated by order entered on 6

violence between respondent and Troy's father C.H. WCHS subsequently filed a petition in which it claimed that Troy and T.B. were neglected juveniles. The petition claimed that respondent alleged that C.H. had assaulted her and threatened to kill Troy and T.B. WCHS further noted that respondent had a history of sixteen prior Child Protective Services (CPS) reports of neglect dating back to 2000. Several of respondent's older children have been removed from her care due to neglect and have not been returned to her care.

On 18 November 2015, based on stipulations made by the parties, Troy and T.B. were adjudicated to be neglected juveniles. On 8 January 2016, the trial court entered a dispositional order in which it left custody of Troy and T.B. with WCHS and ordered respondent to comply with an out of home family services agreement. Troy and T.B. were placed in foster care and respondent was ordered to comply with a visitation plan that included visitation to be supervised by WCHS. On 13 September 2016, the trial court adopted an initial primary permanent plan of reunification with a secondary permanent plan of adoption.

On 10 July 2017, the trial court held a review hearing regarding Troy pursuant to N.C.G.S. § 7B-906.1. At that time, Troy had been placed with his paternal grandmother, J.H., for approximately eight and a half months and was thriving in his placement with her. The trial court found, however, that respondent was not

September 2017. That order is not the subject of this appeal.

-2-

making adequate progress towards satisfying the requirements of her case plan within a reasonable amount of time, that respondent had acted in a manner inconsistent with Troy's health or safety, and that it was unlikely that Troy could return to her care within six months. The trial court determined that the best primary permanent plan for Troy was guardianship and that Troy should be placed in the guardianship of J.H. Respondent and C.H. were granted visitation with Troy, which was to be supervised and monitored by J.H.

On 9 January 2018, WCHS received a report that Troy was neglected and had received improper supervision. Upon investigation, WCHS determined that in December 2017, J.H. had allowed Troy to stay unsupervised with his parents in a motel room where they had been living, in violation of the trial court's orders. During Troy's stay with his parents, he left the motel room and met a man. The man took Troy to a store, bought Troy a toy, then took Troy back to his motel room where he bathed him, washed his genitals, and took photos of Troy naked. Following this incident, J.H. noticed regression in Troy's behavior and Troy told J.H. about the incident. J.H. notified Troy's father about the disclosure and C.H. soon told respondent about the incident. However, neither respondent, C.H., or J.H. contacted WCHS to report the suspected sexual abuse. Troy's disruptive behavior subsequently became so severe that he was hospitalized at UNC Hospital on 21 January 2018 and transferred to Central Regional Hospital on 24 January 2018. On 14 February 2018, WCHS obtained non-secure custody of Troy and filed a petition alleging that Troy

was a neglected juvenile. On 7 June 2018, the trial court adjudicated Troy to be a neglected juvenile, terminated J.H.'s guardianship, and continued custody with WCHS. Respondent was not allowed visitation with Troy.

On 14 August 2018, WCHS filed a motion to terminate respondent's and C.H.'s parental rights on two grounds. The first ground was neglect. *See* N.C.G.S. § 7B-1111(a)(1) (2017). The second ground was that respondent's parental rights with respect to another child had been terminated involuntarily and she lacked the ability or willingness to establish a safe home. *See* N.C.G.S. § 7B-1111(a)(9) (2017). The trial court held a hearing on the motion to terminate on 13 December 2018, but C.H. could not attend because he was hospitalized so the hearing was continued as to C.H. On 17 December 2018, the trial court entered an order finding that the evidence in the case established facts sufficient to support the termination of respondent's parental rights on both grounds alleged in the motion. The trial court further concluded it was in Troy's best interests that respondent's parental rights be terminated. Accordingly, the trial court terminated respondent's parental rights. Respondent gave timely notice of appeal to this Court pursuant to N.C.G.S. §§ 7A-27(a)(5) and 7B-1001(a1)(1).

Respondent argues on appeal that the trial court erred in terminating her parental rights because it did not receive sufficient evidence or make adequate findings of fact.

Our Juvenile Code provides for a two-stage process for the termination of parental rights: the adjudicatory stage and the dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2017). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes. N.C.G.S. § 7B-1109(e), (f) (2017). We review a trial court's adjudication under N.C.G.S. § 7B-1109 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). "If [the trial court] determines that one or more grounds listed in section 7B-1111 are present, the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

Here, the trial court made extensive findings of fact in support of its determination that grounds existed to support the termination of respondent's parental rights. The court found that respondent had a history of CPS reports for neglect and that at least four of her children had been removed from her care. Troy was born prematurely at thirty weeks and respondent tested positive for both cocaine and marijuana at Troy's birth. Another child of respondent's was born prematurely

at twenty-seven weeks and tested positive for cocaine at birth. Over the years there were several reports concerning respondent regarding: improper care, lack of housing, and substance abuse by respondent and C.H. There were also reports that C.H. was violent in the home and that he abused drugs in front of respondent's child. One of respondent's other sons was alleged to have been sexually abused by an individual in the neighborhood. Another report alleged that respondent allowed a registered sex offender to come into the home and that he sexually assaulted one of respondent's children.

In addition to past reports of neglect, the court found that Troy came into foster care after respondent alleged that C.H. grabbed Troy and threatened to "snap off [his] head[.]" C.H. then allegedly bit respondent and chased her with a meat cleaver. Despite this violent incident, respondent dismissed the domestic violence protective order against C.H. Respondent failed to make sufficient progress towards reunification with Troy and as a result, Troy's paternal grandmother J.H. was awarded guardianship. However, in 2018 Troy was adjudicated to be a neglected juvenile for the second time after the court found that J.H. had allowed Troy's parents to have unsupervised contact with him, which resulted in Troy being sexually abused. The sexual abuse experienced by Troy was never reported by respondent, C.H., or J.H. As a result, all three individuals were charged with felony child abuse. Troy was diagnosed with post-traumatic stress disorder (PTSD) following an evaluation due to the sexual abuse. Another physician diagnosed Troy with anxiety disorder

based on PTSD and noted Troy experienced aggression, oppositional behavior, frequent nightmares, and bowel incontinence. Despite the physicians' findings, respondent, C.H., and J.H. did not believe that Troy had been sexually abused.

Finally, the court found during the 2018 adjudication of neglect for Troy that respondent had not remedied many of the same problems that she faced in the 2015 adjudication of neglect for Troy. Respondent continued to lack safe, stable housing, failed to make progress in demonstrating appropriate parenting skills, and failed to acquire treatment for substance abuse, mental health, and domestic violence. Respondent was diagnosed with cocaine, cannabis, and alcohol use disorder. The court also found that respondent continued to be incarcerated for the felony child abuse charge against her. Because Troy had been adjudicated to be neglected twice, the court found that there was a high likelihood that Troy would be neglected again if he returned to respondent's care.

Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citing *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962)). Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights. *In re Moore*, 306 N.C. at 404, 293 S.E.2d at 133.

Our Juvenile Code places a duty on the trial court as the adjudicator of the evidence. It mandates that "[t]he court shall take evidence, find the facts, and shall

adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent." N.C.G.S. § 7B-1109(e) (2017). Section 1A-1, Rule 52(a)(1) of the North Carolina General Statutes provides in pertinent part: "In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law[.]" N.C.G.S. § 1A-1, Rule 52(a)(1) (2017). This Court has held:

> [W]hile Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

*Quick v. Quick*, 305 N.C. 446, 451–52, 290 S.E.2d 653, 658 (1982) (emphasis in original).

Respondent makes several challenges to the findings of fact in this case. Respondent first argues that findings of fact 9–13, 15, 20–23, and 25–27 were improper because they merely recite prior allegations, describe what various people not in court, or unidentified, believed about certain events, and do not meet the standard for evidentiary findings sufficient to support conclusions of law. Respondent references a Court of Appeals case where the respondent similarly argued that the trial court failed to make sufficient findings of fact, but instead merely recited the testimony of witnesses at the hearing. *See In re C.L.C.*, 171 N.C. App. 438, 445–446, 615 S.E.2d 704, 708 (2005), *aff'd per curiam in part and disc. rev.*

*improvidently allowed in part*, 360 N.C. 475, 628 S.E.2d 760 (2006). In that case, the Court of Appeals, applying Rule 52(a)(1) of the North Carolina Rules of Civil Procedure and this Court's opinion in *Quick*, determined that:

> While the trial court did include findings of fact that summarized the testimony, the court also made the necessary ultimate findings of fact. There is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes. The testimony summaries were not the ultimate findings of fact; those findings were found elsewhere in the order.

*C.L.C.*, 171 N.C. App. at 446, 615 S.E.2d at 708. Here, the challenged findings include procedural facts about the case, for example, finding of fact 11 states: "On January 9, 2002 three of [respondent's] older children were taken into foster care for neglect and those children were not returned to the care of [respondent]." In large part they include findings of fact from prior orders in the case, such as finding of fact 20: "The parents did not take sufficient precautions to prevent [Troy] from leaving the motel room unaccompanied." Rather than being summaries of testimony which occurred in *C.L.C.,* the trial court in this case relied partly on evidence from prior proceedings and findings in earlier orders, which as discussed below, is proper and appropriate.

Respondent further argues that findings 12 and 13 were insufficiently explanatory. Specifically, respondent contends that finding of fact 12[3] fails to

---

[3] Finding of Fact 12 states: "On April 9, 2009 there were concerns with a lack of housing, improper care, and substance abuse on the part of [respondent] and [C.H.]. On September 18, 2012 there were concerns that [C.H.] was violent and aggressive in the home and that [respondent] and [C.H.] were abusing drugs in the presence of [respondent]'s child,

establish the conditions which led to Troy's removal in 2012, merely stating "*concerns with a lack of housing, improper care, and substance abuse.*" Finding of fact 13[4] described a report about a sexual offender who is "believed" to have sexually abused one of respondent's older children. However, these findings do contain specific allegations and they, as well as other findings challenged by respondent, were stipulated to by respondent when Troy was adjudicated neglected in 2015 and the trial court made the same findings in its 2015 and 2018 adjudications. *See In re Ordinance of Annexation No. 1977-4*, 296 N.C. 1, 14, 249 S.E.2d 698, 706 (1978) ("[S]tipulations constitute judicial admissions binding on the parties and dispense with the necessity of proving the stipulated fact. Such stipulations continue in force for the duration of the controversy and preclude the later assertion of a position inconsistent therewith." (citations omitted)). Furthermore, respondent did not appeal from the trial court's adjudication order. Therefore, respondent is bound by the doctrine of collateral estoppel from re-litigating these findings of fact. *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (Under the doctrine of

---

[T.B.]."

[4] Finding of Fact 13 states: "[Troy] was born premature at thirty weeks and [respondent] tested positive for cocaine and marijuana at [Troy's] birth. There were also concerns that [respondent]'s son [Tq. B.] had been sexually abused by someone in the neighborhood and that the family was facing eviction December 27, 2012. On July 5, 2013 there was a report that [C.H.] was smoking marijuana on a daily basis in the presence of the children and [Troy], who had respiratory problems. On October 14, 2013 there was a report that [respondent] was allowing [A.J.] in the home and [A.J.] is a registered sex offender who is believed to have sexually assaulted one of [respondent]'s older children."

collateral estoppel, parties "are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination.").

Respondent next argues that the trial court improperly relied on findings from dispositional orders, where the evidence was subject to a lower standard of proof, to establish that respondent had not made adequate progress towards reunification and had not corrected the conditions that led to Troy's removal. Respondent further contends that WCHS did not offer sufficient evidence at the termination hearing to enable the trial court to make an independent determination that she had not made progress towards satisfying the requirements of her case plan. However, the evidence is more extensive than respondent acknowledges.

A trial court may take judicial notice of findings of fact made in prior orders, even when those findings are based on a lower evidentiary standard because where a judge sits without a jury, the trial court is presumed to have disregarded any incompetent evidence and relied upon the competent evidence. *Munchak Corp. v. Caldwell*, 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981). As this Court has stated:

> [E]vidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights. The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect.

*In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).  We agree with the Court of Appeals' precedent holding that the trial court may not rely solely on prior court orders and reports but must receive some oral testimony at the hearing and make an independent determination regarding the evidence presented.  *In re A.M., J.M.*, 192 N.C. App. 538, 541–42, 665 S.E.2d 534, 536 (2008), *appeal after remand*, 201 N.C. App. 159, 688 S.E.2d 118 (2009) (unpublished).

Here, the trial court took judicial notice of the record.  We note, however, that several of the trial court's findings of fact regarding respondent's lack of progress were not taken from prior dispositional orders, which have a lower standard of proof, but from the 2018 adjudicatory order in which the findings were proven by the higher standard of "clear and convincing evidence."  N.C.G.S. § 7B-805 (2017).  In the 2018 adjudicatory order, while recounting the historical facts of the case, the trial court found as fact that respondent "did not make sufficient progress towards remedying the conditions which brought [Troy] into the custody of WCHS and failed to complete the Out of Home Family Services Agreement and comply with all of the orders of the Court in order to timely reunify with [Troy]."  In addition to taking judicial notice of the record, the social worker assigned to the case testified at the hearing regarding respondent's historical and current lack of progress, and respondent testified that she had not yet taken any parenting classes.  The trial court's findings of fact appear to be based, at least in part, on testimony provided at the hearing, sufficient to demonstrate that the trial court made an independent determination regarding the

evidence presented. Accordingly, we conclude that respondent's argument is without merit.

Respondent alternatively argues that, even assuming *arguendo* the trial court's findings were not merely based solely on prior dispositional orders, the evidence generally does not support findings of fact 15, 28, 31, 32, 35[a], and 35[b] (the trial court's order erroneously contained two findings of fact 35). Our review of the record evidence indicates that there is support for each of these findings.

For example, the social worker testified in detail and without contradiction about the events which led to WCHS assuming non-secure custody in February 2018. The social worker testified that while Troy was placed in guardianship with J.H., respondent was given unsupervised visitation with Troy in violation of the trial court's orders and that Troy was sexually abused while in respondent's care. The social worker additionally testified as to respondent's case plan, her persistent failure to comply with her case plan, her various diagnoses, and her failure to make progress. Finally, the social worker testified that in her opinion, if Troy were returned to respondent's custody, there was a high likelihood that there would be a repetition of neglect.

Respondent specifically argues, regarding finding of fact 15, that the trial court erred by finding that she may still be in a relationship with C.H. At the termination hearing, when asked whether she and C.H. considered themselves to still be "together," respondent replied: "We communicate." This Court has previously held

that it is the trial judge's duty to consider all the evidence, pass upon the credibility of the witnesses, and determine the reasonable inferences to be drawn from the testimony. *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167–68. Even if an inference that respondent is still "in a relationship" with C.H. is not reasonably drawn from the "we communicate" answer, this fact is not determinative of the ultimate conclusion that grounds exist to terminate respondent's parental rights. In other words, even if respondent is no longer in a relationship with C.H., the remaining findings in the case are more than sufficient to support the ultimate termination order.

Respondent further contends that there was no evidence that she had no plans "to live independently for the foreseeable future." Yet, respondent herself testified that she planned to live with an aunt upon her release from prison and she did not offer any plan for transitioning to independent living. Accordingly, we conclude the clear and convincing evidence in the record supported the trial court's findings of fact on this point.

Respondent separately argues that the trial court wholly failed to find as fact that Troy was sexually abused. However, the trial court specifically found in finding of fact 19 and finding of fact 35 that while in respondent's care, Troy was sexually abused. Thus, respondent's contention is without merit.

We next turn to whether the trial court's findings of fact support its conclusion that grounds existed to terminate respondent's parental rights. The trial court adjudicated the existence of two grounds to terminate respondent's parental rights.

First, neglect under N.C.G.S. § 7B-1111(a)(1). Second, that respondent's parental rights to another child had previously been terminated and respondent lacked the ability or willingness to establish a safe home for Troy under N.C.G.S. § 7B-1111(a)(9). "If either of the [two] grounds aforesaid is supported by findings of fact based on clear, cogent and convincing evidence, the order appealed from should be affirmed." *In re Moore*, 306 N.C. at 404, 293 S.E.2d at 133.

Section 7B-1111(a)(9) allows for the termination of parental rights where "[t]he parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home." N.C.G.S. § 7B-1111(a)(9) (2017). A "safe home" is defined by the Juvenile Code as one "in which the juvenile is not at substantial risk of physical or emotional abuse or neglect." N.C.G.S. § 7B-101(19) (2017).

Here, respondent does not dispute that her parental rights to another child were terminated by a court of competent jurisdiction. Rather, respondent argues the record does not support a finding that she lacked the ability or was unwilling to establish a safe home for Troy. The record shows that at the time of the termination hearing, respondent was still incarcerated with an unknown release date and had no stable home to provide for Troy upon her release from incarceration. This Court recognizes that "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re M.A.W.*, 370 N.C. 149, 153, 804 S.E.2d

513, 517 (2017) (quoting *In re P.L.P.*, 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006)) (citation omitted). However, the record indicates that respondent had a history of unstable housing, that she had not satisfactorily completed her case plan, and that Troy was sexually abused while in respondent's care during a time when she was living in a motel room. The record further demonstrates that respondent did not believe Troy was sexually abused, that she did not report the abuse, that she does not understand the trauma that Troy suffered or the seriousness of his mental health needs, and that she will be unable to meet his needs. We thus conclude the record supports the trial court's finding that respondent lacked the willingness or ability to establish a safe home. Accordingly, we hold the trial court did not err by concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(9) to terminate respondent's parental rights.

The trial court's conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(9) is sufficient in and of itself to support termination of respondent's parental rights. Furthermore, the trial court made sufficient findings in determining that the termination of respondent's parental rights was in Troy's best interest. *See* N.C.G.S. § 7B-1110(a) (2017). Accordingly, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.