IN THE SUPREME COURT OF NORTH CAROLINA

No. 105A19

Filed 6 December 2019

IN THE MATTER OF: I.G.C., J.D.D.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 2 January 2019 by Judge F. Warren Hughes in District Court, Madison County. This matter was calendared in the Supreme Court on 7 November 2019 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Hockaday & Hockaday, P.A., by Daniel M. Hockaday, for petitioner-appellee Madison County Department of Social Services.*
>
> *Patrick, Harper & Dixon, LLP, by Amanda C. Perez, for appellee Guardian ad Litem.*
>
> *Wendy C. Sotolongo, Parent Defender, by J. Lee Gilliam, Assistant Parent Defender, for respondent-appellant father.*
>
> *Edward Eldred for respondent-appellant mother.*

MORGAN, Justice.

Respondents, the parents of the minor children I.G.C. (Ivy) and J.D.D. (Jacob)[1] (collectively, the children), appeal from the district court's orders terminating their parental rights. We conclude that the district court made sufficient findings of fact,

---

[1] Pseudonyms are used to protect the identity of the juveniles and for ease of reading.

based on clear, cogent, and convincing evidence, to support the court's conclusions that grounds existed to terminate respondents' parental rights, and that such termination was in the children's best interests. Accordingly, we affirm the district court's orders.

*Factual Background and Procedural History*

On 27 September 2016, the Madison County Department of Social Services (DSS) filed petitions alleging that Ivy and Jacob were neglected and dependent juveniles. DSS had received a report on 6 September 2016, indicating that respondent-mother was drinking alcohol, using methamphetamines on a daily basis, and driving with the children while she was intoxicated. After DSS initiated a case to investigate this report, respondent-mother twice drove to the DSS office after drinking, registering a .07 reading on the breathalyzer test on one occasion and a .03 reading on the other. Ivy disclosed to DSS an incident during which respondent-mother drank "a little" and then hit a guardrail with Ivy in the vehicle. The female juvenile further disclosed that respondents had a "big fight" with each other while at a birthday party. Respondent-mother reported to DSS that respondent-father consumed alcohol, used methamphetamines, and smoked crack cocaine. DSS obtained nonsecure custody of both juveniles.

On 4 November 2016, the district court entered an order which adjudicated Ivy and Jacob as dependent juveniles. Although respondents both consented to an adjudication of neglect based upon the facts alleged in the petition and recounted

above, the district court dismissed the neglect allegations. The dependency order from the district court, however, incorporated, *inter alia*, the above-stated facts as the basis for the children's removal from respondents' home and ordered respondents to enter into case plans with DSS within ten days of the trial court's adjudication order. The children remained in the custody of DSS. Respondent-mother's case plan contained eleven requirements designed to address her issues with parenting, substance abuse, mental health, domestic violence, stable housing, and employment. As part of the case plan, respondent-mother was not to incur any new criminal charges and was required to attend all scheduled visitations and team meetings with DSS. Respondent-father's case plan included similar requirements.

On 23 October 2017, the district court entered a permanency planning order which found that respondents had only made minimal progress toward completing their respective case plans. The permanent plan was set as adoption, with a concurrent plan of guardianship. The district court relieved DSS of further reunification efforts and ordered DSS to file termination of parental rights petitions within sixty days.

On 18 January 2018, DSS filed motions in the cause to terminate respondents' parental rights on the grounds of neglect, willfully leaving the children in a placement outside the home for more than twelve months without making reasonable progress in correcting the removal conditions, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (2), (7) (2017). The termination hearing was conducted during the time

period of 25-26 September 2018. On 2 January 2019, the district court entered orders finding that the evidence established facts sufficient to support the termination of both respondents' parental rights pursuant to N.C.G.S. § 7B-1111(a)(1)–(2). The district court also concluded that it was in the children's best interests for the parents' rights to be terminated and therefore, terminated respondents' parental rights. Each respondent appealed to this Court pursuant to N.C.G.S. §§ 7A-27(a)(5) and 7B-1001(a1)(1).

*Respondent-mother's Appeal*

Respondent-mother argues that the district court erred by concluding that grounds existed to terminate her parental rights. She contends that the district court's ultimate findings and conclusions as to grounds for termination were unsupported in light of the evidence presented regarding the progress that respondent-mother had made in completing her case plan by the time of the termination hearing. We disagree.

A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2017); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under section 7B-1111(a) of our General Statutes. N.C.G.S. § 7B-1109(e), (f). We review a district court's adjudication "to determine whether the findings are supported by clear, cogent and convincing

evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. at 111, 316 S.E.2d at 253 (citing *In re Moore*. 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). If the petitioner meets its burden during the adjudicatory stage, "the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

Section 7B-1111(a)(2) allows for the termination of parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2).

Respondent-mother's limited achievements in correcting the circumstances that led to the removal of the children throughout the history of this case are well-documented in the district court's findings of fact. She appears to tacitly accept that the district court's finding that she "made minimal progress on her DSS case plan . . . until after the [c]ourt[-]ordered efforts ceased in September[ ] 2017" was supported by the evidence. Respondent-mother concedes that the court properly found that she never completed a substance abuse intensive outpatient program (SAIOP) or inpatient substance abuse treatment, as recommended, never completed a recommended eighteen-week domestic violence program, missed seventeen of thirty-

nine drug screens and tested positive on two other occasions, and committed two driving while intoxicated (DWI) offenses after she entered into the case plan.

Respondent-mother does, however, challenge the content and the context of many of the district court's findings regarding her progress between the court's cessation of reunification efforts and the termination hearing. We limit our review of challenged findings to those that are necessary to support the district court's determination that the stated ground existed to terminate respondent's parental rights. *In re T.N.H.*, 831 S.E.2d 54, 58–59 (N.C. 2019) (citing *In re Moore*, 306 N.C. at 404, 293 S.E.2d at 133).

First, respondent-mother argues that the district court incorrectly found that she had not maintained stable employment for a minimum of six months. This argument is contrary to respondent-mother's own testimony at the termination hearing, in which she acknowledged that, after a five-month gap in employment, she started a job at Dollar Tree in April 2018, less than six months before the termination hearing.

Respondent-mother next asserts that the district court erred by finding that she failed to obtain stable housing for at least six months. She candidly acknowledges that the court correctly found that she had "moved at least four (4) times during the pendency of this case," yet represents that her frequent residential changes did not signal instability. Respondent-mother also claims that she had been residing at her current address for six months. The district court found that respondent-mother had

been living at her current residence since April 2018. The termination hearing occurred at the end of September 2018, meaning that respondent-mother was days shy of having resided at the residence for the designated six-month minimum period of time. In light of this computation of time, respondent-mother had not yet fully achieved a full six-months of stable housing, thus verifying the correctness of the district court's finding on this matter. Moreover, the district court did not err in interpreting respondent-mother's frequent moves as further evidence of housing instability.

Respondent-mother further urges us to determine that the district court's findings were improper in that its assessment of her progress with parenting skills and substance abuse, mental health, and domestic violence treatment did not fairly credit the progress that she had made in these areas. Indeed, although the court found that respondent-mother had completed multiple parenting courses, had participated in treatment for substance abuse and domestic violence, and had achieved three recent negative drug screens, the district court also found that the substance abuse and domestic violence treatments were at a lower level of duration and intensity than recommended and were never approved by the tribunal. For instance, instead of the eighteen-week substance abuse program required by her case plan, respondent-mother only "participated in a six[-]week program with a non-licensed therapist[.]" Respondent-mother also never completed an SAIOP or inpatient substance abuse treatment. Thus, while respondent-mother was making

some progress as of the time of the termination hearing, it was not the level of progress required by her case plan. By respondent-mother's own admission during the termination hearing, she would not feel comfortable having the children returned to her care for another "year, year and a half" because she feared the possibility that she would relapse. While respondent-mother was getting closer to completing various aspects of her case plan such as maintaining stable housing and employment, she still failed to complete the recommended treatment needed to fully address the core issues of substance abuse and domestic violence which had played the largest roles in the children's removal.

The district court's findings reflect that it considered all of respondent-mother's efforts up to the time of the termination hearing, weighed the evidence before it, and then made findings which showed that respondent-mother waited too long to begin working on her case plan and that, as a result, she had not made reasonable progress toward correcting the conditions that led to the children's removal by the time of the termination hearing. Therefore, the court properly concluded that respondent-mother's rights should be terminated based upon that failure.

The district court's conclusion that the ground of failure to make reasonable progress existed pursuant to N.C.G.S. § 7B-1111(a)(2) is sufficient in and of itself to support termination of respondent-mother's parental rights. *See In re T.N.H.*, 831 S.E.2d at 62. Furthermore, respondent-mother does not challenge the court's

conclusion that termination of her parental rights was in her children's best interests. *See* N.C.G.S. § 7B-1110(a). Accordingly, we affirm the district court's orders terminating respondent-mother's parental rights.

### Respondent-father's Appeal

Counsel for respondent-father has filed a no-merit brief on behalf of this parent pursuant to N.C.R. App. P. 3.1(e). Counsel has advised respondent-father of his right to file pro se written arguments on his own behalf and has provided respondent-father with the documents necessary to do so. Respondent-father has not submitted any written arguments to this Court.

We independently review issues contained in a no-merit brief filed pursuant to Rule 3.1(e). *In re L.E.M.*, 831 S.E.2d 341, 345 (N.C. 2019). Respondent-father's attorney filed a twenty-two-page brief in which counsel identified three issues that could arguably support an appeal, but also explained why counsel believed that each of the issues lacked merit. Based upon our careful review of the issues identified in the no-merit brief in light of our consideration of the entire record, we are satisfied that the district court's 2 January 2019 orders were supported by competent evidence and based on proper legal grounds. Consequently, we affirm the district court's orders terminating respondent-father's parental rights.

AFFIRMED.