IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-140

No. 69A21

Filed 5 November 2021

IN THE MATTER OF: M.E.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 20 November 2020 by Judge Monica M. Bousman in District Court, Wake County. This matter was calendared for argument in the Supreme Court on 30 September 2021 but determined on the record and brief without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*Mary McCullers Reece for respondent-appellant father.*

NEWBY, Chief Justice.

Respondent, the father of M.E.S. (Molly),[1] appeals from the trial court's order terminating his parental rights. After careful review, we affirm.

Molly was born on 7 March 2009. Though respondent and petitioner, Molly's mother, lived together for two brief periods shortly after Molly's birth, they were never married. Despite respondent's presence, petitioner alone attended to Molly's needs during this time.

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

On 18 February 2015, a permanent child custody and support order (Permanent Order) was entered in District Court, Union County. That court found petitioner "has been primarily responsible for attending to [Molly]'s educational, nutritional, housing, shelter, food and healthcare needs" since Molly's birth. On the other hand, it found respondent "suffered from a substance abuse addiction" and "anger control issues." It also found "[t]hat [respondent] has engaged in varying and different episodes of domestic violence against [petitioner] both prior to [petitioner's] pregnancy and during [petitioner's] pregnancy" with Molly. Specifically, on one occasion respondent "took a hammer to [petitioner's] car, and was so impaired at the time that he did not remember doing that until the next morning" when petitioner reminded him. On another occasion, respondent "made [petitioner] get out of an automobile when they were traveling together, and made her walk" in the rain.

Based on these findings, that court concluded petitioner was "a fit and proper person to have the permanent care, custody and control of the minor child." It also concluded respondent was "not a fit and proper person to have visitation with the minor child at th[at] time" because of domestic violence, anger control, and substance abuse issues. Accordingly, the court awarded physical and legal custody of Molly to petitioner. Moreover, it ordered

> [t]hat if [respondent] wishes visitation with the minor child, [respondent] shall have to come to Court and present evidence of anger control management skills, substance abuse assessment, and following through with treatment

> recommendations. If [respondent] can come to court and show these things, then the Court shall upon proper filing of a Motion to Modify, consider these issues amongst others about whether [respondent] should have visitation with [Molly].

The court also ordered respondent to pay $300.34 per month in child support.

In 2016 respondent saw a therapist at Monarch Behavioral Health. After several sessions, the therapist recommended respondent attend the New Options for Violent Actions (NOVA) group therapy program offered in Mecklenburg County. Respondent attended and completed NOVA in 2016. Respondent also testified he had six or seven negative drug tests at the McLeod Center by 2018. At the termination hearing, respondent introduced into evidence negative results from an additional drug test that occurred on 16 September 2019.

Four years after the entry of the Permanent Order, on 31 May 2019, petitioner filed a petition to terminate respondent's parental rights in District Court, Wake County. The petition alleged that respondent had "willfully and intentionally abandoned the minor child for at least six (6) consecutive months immediately preceding the filing of this petition and ha[d] forgone [sic] all his parental duties." *See* N.C.G.S. § 7B-1111(a)(7) (2019) (willful abandonment of the juvenile for at least six consecutive months preceding the filing of the petition). The petition also alleged that respondent "willfully fail[ed] without justification to pay for any of the care, support,

and education of the minor child." *See* N.C.G.S. § 7B-1111(a)(4) (willful failure to pay for the care, support, and education of the juvenile pursuant to a custody agreement).

¶ 7     On 20 November 2020, the trial court entered an order determining that grounds existed to terminate respondent's parental rights pursuant to, *inter alia*, N.C.G.S. § 7B-1111(a)(4) and (7).[2] The trial court further concluded that it was in Molly's best interests that respondent's parental rights be terminated. Accordingly, the trial court terminated respondent's parental rights. Respondent appeals.

¶ 8     On appeal respondent contends the trial court erred by concluding a ground existed to terminate his parental rights based on willful abandonment. Respondent argues the trial court's findings of fact were not supported by clear, cogent, and convincing evidence and those findings do not support the conclusions of law. Respondent also argues he did not exhibit the requisite willful intent to abandon Molly. Finally, respondent argues the trial court improperly terminated his parental rights under N.C.G.S. § 7B-1111(a)(4).

---

[2] The trial court also stated it was terminating respondent's parental rights under N.C.G.S. § 7B-1111(a)(1) (neglect). In the petition for termination, however, there was no language mirroring the statutory ground of neglect. Additionally, when asked during argument on respondent's motion to dismiss whether the petition alleged any grounds other than N.C.G.S. § 7B-1111(a)(4) and (7), petitioner's counsel responded, "No." *See In re B.L.H.*, 190 N.C. App. 142, 147, 660 S.E.2d 255, 257 (stating that "the factual allegations in the petition [must] give the respondent sufficient notice of the ground" for the trial court to terminate parental rights on that ground), *aff'd per curiam*, 362 N.C. 674, 669 S.E.2d 320 (2008); N.C.G.S. § 7B-1104(6) (2019). Notably, respondent has not challenged this ground for termination in his brief to this Court. Nonetheless, because we hold the trial court properly terminated respondent's parental rights under N.C.G.S. § 7B-1111(a)(7), we do not address this ground.

¶ 9        A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). The petitioner bears the burden at the adjudicatory stage of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under subsection 7B-1111(a) of our General Statutes. N.C.G.S. § 7B-1109(f). We review a trial court's adjudication "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. at 111, 316 S.E.2d at 253 (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)). Unchallenged findings of fact "are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). We review only those findings necessary to support the trial court's conclusion that a ground existed to terminate parental rights. *In re B.C.B.*, 374 N.C. 32, 38, 839 S.E.2d 748, 753 (2020) (citing *In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58–59).

¶ 10        Here the trial court concluded that a ground existed to terminate respondent's parental rights based on willful abandonment. A trial court may terminate parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S. § 7B-1111(a)(7). In this case, the determinative six-month period is from 30

November 2018 to 31 May 2019. "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citing *In re Davison's Adoption*, 44 N.Y.S. 2d 763 (1943)). "As used in N.C.G.S. § 7B-1111(a)(7), abandonment requires a 'purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to [the child].' " *In re I.R.M.B.*, 377 N.C. 64, 2021-NCSC-27, ¶ 15 (alteration in original) (quoting *In re A.G.D.*, 374 N.C. 317, 319, 841 S.E.2d 238, 240 (2020)). "The existence of willful intent 'is an integral part of abandonment' and is determined according to the evidence before the trial court." *Id.* (quoting *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re B.C.B.*, 374 N.C. at 36, 839 S.E.2d at 752 (quoting *In re N.D.A.*, 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019)). In support of its conclusion that respondent willfully abandoned Molly, the trial court made the following findings of fact:

> 32. At no time since entry of the Permanent Order has a Motion to Modify been filed by either party in Union County District Court File No. 11CVD2655 and at no time has a subsequent order been issued regarding the custody

or child support of the minor child.

. . . .

44. Respondent testified that between the entry of the Permanent Order and the filing of the petition he purchased gifts for the minor child but did not deliver them to her.

45. Respondent's mother delivered gifts from herself to the child on several occasions to the [p]etitioner's parents' house. The last delivery of any gifts was in 2016. The gifts were not substantial nor regular.

46. Prior to the petition being filed, [r]espondent not once sent a card to the minor child. The Permanent Order did not order no contact or include any language preventing the [r]espondent from sending gifts or cards yet he chose not to do so.

47. Prior to the Petition being filed, [r]espondent last saw the minor child in June 2012. This was prior to the Union County Court ordering no visitation in the Permanent Order.

48. Although the Permanent Order failed to establish visitation with the minor child, the court order put in place steps for the [r]espondent to take should he desire visitation with the minor child.

49. At no time since entry of the Permanent Order has [r]espondent filed a Motion to Modify or made any filings in the Union County custody action.

. . . .

55. Petitioner changed her phone number in or around 2012 and did not inform the [r]espondent.

56. Petitioner had two email addresses at the time she and [r]espondent stopped communicating with one another. Respondent knew both of those email addresses which are

still active email addresses. Petitioner did not receive any emails or inquiries from [r]espondent since at least 2013. She did not block [r]espondent from her emails. Respondent testified he assumed the email addresses were no longer used but admitted he did not send any emails.

. . . .

58. Respondent has had knowledge of [p]etitioner's step-father's address but has failed to send any cards or gifts for the child to that address.

. . . .

60. Although the Permanent Order did not prevent [r]espondent from having contact with the minor child by means other than visitation, at no point since June 2012 until the date petition filed [sic] had the [r]espondent sent a gift, a card, a message through a third party, or any other form of communication to the child.

61. Since June 2012 until the date the Petition was filed, [r]espondent at no time emailed [p]etitioner, called [p]etitioner, or contacted [p]etitioner through a third party. Respondent had sufficient information regarding an attempt to contact other family of [p]etitioner as well as the email addresses of [p]etitioner that could have demonstrated his love, care, and affection for the child. Respondent made no such attempts. His testimony that he "loves her", "misses her", and "thinks about her everyday" has not been demonstrated in any of his actions since he last saw her. His lack of attempts to contact [p]etitioner or her family members demonstrates that he willfully withheld his love, care, and affection from the child and that he abandoned the child.

. . . .

64. Respondent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filling of this petition or motion in that he has failed to have

any visitation or to seek visitation through the existing custody action, made no attempt to have any contact with the minor child, or make any inquiries regarding her welfare since June 2012.

¶ 11    Respondent argues that portions of findings of fact 46, 58, 60, 61, and 64 are unsupported by the evidence. Specifically, respondent argues the trial court erred by finding that he "never tried to send Molly gifts, even by way of third parties." We review each finding in turn.

¶ 12    Respondent argues finding of fact 46 is erroneous because it states respondent "chose not to" send Molly a gift. At the termination hearing, respondent and his mother testified that respondent gave his mother gifts to send to Molly through petitioner's family members. The evidence, however, does not demonstrate whether these gifts were from respondent or respondent's mother. The trial court found the gifts delivered to Molly were from respondent's mother. In doing so, the trial court weighed the evidence and determined that the testimony stating the gifts were from respondent was not credible. *See In re C.A.H.*, 375 N.C. 750, 759, 850 S.E.2d 921, 927 (2020) (noting that the trial court, given its unique position, is the proper entity to make credibility determinations). Therefore, the trial court did not err and finding of fact 46 is binding on appeal.

¶ 13    Respondent argues findings of fact 58 and 60 are also erroneous because those findings state he did not send a gift to Molly. We reject these challenges for the reasons stated above. Finally, finding of fact 61 concerns respondent's attempts to

contact petitioner or petitioner's family members about Molly; this finding does not mention whether respondent sent a gift. Respondent makes no challenge relevant to finding of fact 61. Thus, finding of fact 61 is binding on appeal.[3] *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58 ("Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." (citing *Koufman*, 330 N.C. at 97, 408 S.E.2d at 731)).

¶ 14      Respondent next argues finding of fact 54 was not supported by clear, cogent, and convincing evidence. Respondent challenges finding of fact 54 "to the extent [it] might be construed as an affirmative finding that [respondent] had the financial means or the legal ability to succeed in modifying" the Permanent Order. Respondent, however, does not challenge finding of fact 32 or 49, which both state that neither party has filed a motion to modify the child custody order. Therefore, these findings are binding on appeal. *See id.* Regardless of whether respondent had the financial means or legal ability to succeed, these findings are sufficient to establish respondent did not attempt to seek visitation with Molly during the relevant six-month

---

[3] Respondent also challenges finding of fact 64 to the extent it found respondent never sent a gift to Molly. In finding of fact 64, the trial court found respondent willfully abandoned Molly because he failed to have or seek visitation and made no attempt to contact Molly or inquire about her welfare since June of 2012. Whether respondent willfully abandoned Molly is a conclusion of law. *See In re S.C.L.R.*, 2021-NCSC-101, ¶ 27 (treating determination of willful abandonment as a conclusion of law). As such, we include this finding under our discussion of respondent's challenge to the trial court's conclusion that respondent willfully abandoned Molly.

timeframe.[4]

¶ 15      The trial court's findings of fact support its conclusion that respondent's parental rights were subject to termination based on willful abandonment. Here the findings show that respondent last saw Molly in June of 2012. In the Permanent Order, entered almost three years later in 2015, respondent was not awarded visitation due to domestic violence, anger control, and substance abuse issues. That order, however, also outlined the steps respondent could take to receive visitation. Throughout 2016, respondent took some steps to address these issues, including individual and group therapy. By 2018, however, respondent stopped addressing these issues. Despite taking these steps, respondent never attempted legal action to modify the Permanent Order to allow visitation.

¶ 16      Additionally, the trial court found the Permanent Order "did not prevent [r]espondent from having contact with the minor child," and respondent knew how to contact petitioner or her family such that he "could have demonstrated his love, care, and affection for the child." Nonetheless, respondent did not attempt to contact petitioner or Molly, nor did he send Molly a gift or card. Moreover, from 2018 until the petition was filed, respondent never paid more than a third of his monthly

---

[4] Respondent also argues the trial court erred by considering evidence outside the record by " 'Googling' [petitioner]'s address to see whether [respondent] could have located [petitioner] to make direct contact with Molly." Even assuming this extraneous research was improper, as discussed, the findings as a whole support the trial court's decision to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(7).

child-support obligation. Because these findings considered as a whole show respondent willfully abandoned Molly, the trial court properly terminated respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7).

Respondent also argues the trial court erred in terminating his rights under N.C.G.S. § 7B-1111(a)(4). Because we conclude the trial court properly terminated respondent's parental rights based on N.C.G.S. § 7B-1111(a)(7), we do not address respondent's remaining arguments. *See In re Moore*, 306 N.C. at 404, 293 S.E.2d at 132 (holding that an appealed order should be affirmed when any one of the grounds found by the trial court is supported by findings of fact based on clear, cogent, and convincing evidence); *see also* N.C.G.S. § 7B-1111(a) ("The court may terminate the parental rights upon a finding of one or more [grounds for termination.]"). Thus, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.