IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-38

No. 154A21

Filed 18 March 2022

IN THE MATTER OF: J.I.G. and A.M.G.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 19 March 2021 by Judge Denise Hartsfield in District Court, Forsyth County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Melissa Starr Livesay for petitioner-appellee Forsyth County Department of Social Services.*

*Mary V. Cavanagh and Jordan P. Spanner for appellee Guardian ad Litem.*

*Robert W. Ewing for respondent-appellant father.*

MORGAN, Justice.

The trial court in this case terminated the parental rights of respondent-father to two juveniles, James and Amy[1], after finding that clear, cogent, and convincing evidence supported the existence of three grounds for the termination of parental rights as enumerated in N.C.G.S. § 7B-1111(a) (2021). Respondent-father challenges

---

[1] In accord with the regular practice of our appellate courts, pseudonyms have been utilized in lieu of the actual names of the children to protect their identities.

the evidentiary basis for the trial court's adjudication of the existence of each of the three grounds but does not challenge the trial court's conclusion that termination of respondent-father's parental rights served the best interests of the juveniles. Because we determine that clear, cogent, and convincing evidence supports the trial court's findings of fact which support the determination that respondent-father "is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C.G.S. §] 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future" as required by N.C.G.S. § 7B-1111(a)(6), the trial court's order terminating respondent-father's parental rights is affirmed.

## I. Factual and Procedural Background

¶ 2        On 5 May 2017, 9-week-old James was admitted to the intensive care unit of Brenner Children's Hospital in Forsyth County after James's mother called the telephone emergency number 911 to report that the juvenile was limp and appeared to have ceased breathing. The attending physician determined that James was in critical condition due to extensive non-accidental trauma which included approximately 67 fractures to the infant's bones throughout his body. The mother told the attending physician that she had left James propped upon the edge of a bed with a bottle and had left the room. When the juvenile's mother returned to the room, James was nonresponsive on the floor. A Forsyth County Department of Social

Services (DSS) social worker interviewed James's mother at the hospital. The mother provided vacillating stories regarding the circumstances which existed at the time that the juvenile suffered his injuries. First, the child's mother represented that she was the only person who provided care for James and his three-year-old sister Amy, and that Amy must have been the one to hurt James because Amy was "hyper." Initially, the mother refused to reveal the identity of the father of James and Amy. Eventually, the mother revealed that respondent-father was the father of James and Amy, along with the disclosure that he had been residing in the same home as the children at the time of James's injuries. The mother explained that respondent-father would look after the children while she worked, and that respondent-father had been taking care of James and Amy while the mother worked on the night before James was admitted to the hospital for the infant's injuries. The DSS social worker interviewed the juvenile Amy on the following day. The social worker asked Amy if she knew how her brother James had been injured, and the three-year-old affirmatively nodded her head. Amy volunteered that "Mommy threw the baby on the floor" and that "Mommy was mad and shoved brother in [sic] the floor," as recorded by the DSS social worker. DSS also interviewed respondent-father who, like the mother, could not offer a plausible explanation for the cause of the injuries to James. While respondent-father instead repeatedly admitted that he had dropped James on the floor, the attending physician explained that respondent-father's story could not

account for the extent of the infant's injuries.

On 9 May 2017, Forsyth County DSS filed juvenile petitions which alleged that both James and Amy were neglected and dependent juveniles, and that James was also an abused juvenile. The trial court entered orders granting nonsecure custody of both children to DSS on the same day based on the allegations contained within the petitions. On 13 September 2017, an adjudication hearing was held concerning the petitions. Respondent-father stipulated to the factual basis contained within the petitions, resulting in the trial court adjudicating James to be an abused, neglected, and dependent juvenile, and adjudicating Amy to be a neglected and dependent juvenile. Respondent-father was actively engaged in satisfying his case plan by attending the majority of his assigned parenting classes, visitation sessions, and court-ordered mental health and substance abuse assessments. However, respondent-father was arrested on 7 November 2017 and charged with four counts of felony child abuse based upon the injuries sustained by James in May 2017. Respondent-father remained incarcerated throughout the pendency of this case due to his inability to secure funds to post his assigned bond on the felony charges.

On 6 December 2019, Forsyth County DSS filed a motion to terminate the parental rights of the mother and respondent-father. However, due to COVID-19, issues with notice, and the illness of counsel, the trial court dismissed the termination motion without prejudice. DSS subsequently filed a second motion on 13 November

2020 to terminate the parental rights of the children's mother and respondent-father, alleging that grounds existed to terminate respondent-father's parental rights to both James and Amy under N.C.G.S. § 7B-1111(a)(1) (neglect) and (6) (incapacity), and additionally as to James alone under N.C.G.S. § 7B-1111(a)(1) (abuse). The TPR motions in this case were heard on 22 February 2021. At the hearing, the trial court received testimony from DSS social workers, the Guardian ad Litem for the juveniles, the mother of the juveniles, and respondent-father. On 19 March 2021, the trial court entered an order pursuant to this hearing which terminated the parental rights of the mother and respondent-father to both James and Amy.

Based on previous adjudication orders entered in this case, DSS's investigation, and the testimony provided at the TPR hearing, the trial court entered findings in the termination of parental rights order which reflect that respondent-father has "severe cognitive defects" which present themselves as deficits in reasoning, problem solving, planning, and judgment. Further, respondent-father has an IQ of 61 and has been diagnosed with unspecified intellectual disability, bipolar disorder, and ADHD. Respondent-father has received SSI disability payments since he was seven years old due to his mental health and cognitive issues, and respondent-father has used these funds in the past to help to satisfy the basic needs of James and Amy. Respondent-father was ordered to complete a parenting capacity evaluation in order to assess his ability to parent, but he has declined an assessment arranged by

DSS while he has been incarcerated.

In light of the refusal of both parents to explain the source of James's extensive injuries, the trial court found that both the mother and respondent-father were responsible for having abused their son. The trial court found that "there is no evidence presented that the Father's cognitive defects and abilities . . . are expected to change." Due to respondent-father's profound mental impairment, the trial court further found that respondent-father "lacks the ability to independently care for the minor children" and "the capacity to parent." The trial court went on to find that clear, cogent, and convincing evidence supported the determination that grounds existed to terminate respondent-father's parental rights to James and Amy under N.C.G.S. § 7B-1111(a)(1) (neglect) and (6) (incapacity), and additionally as to James alone under N.C.G.S. § 7B-1111(a)(1) (abuse). The trial court concluded that the termination of the parental rights of respondent-father to James and Amy would serve the best interests of the juveniles. Respondent-father timely filed notice of appeal.[2]

## II. Analysis

Before this Court, respondent-father contends that the trial court's findings of fact fail to establish that he lacked the capacity to parent, that James and Amy were neglected juveniles, and that James was an abused juvenile at the hands of respondent-father. Regarding the existence of the ground of dependency as

---

[2] The mother is not a party to this appeal.

memorialized in N.C.G.S. § 7B-1111(a)(6), respondent-father cites evidence in the record which he submits would support a finding that he would have the capacity to parent the juveniles once respondent-father is released from incarceration. Respondent-father also challenges the trial court's finding of fact that expresses respondent-father's incapacity to parent.

¶ 8    Respondent-father's appeal represents a challenge to the trial court's adjudication of the existence of each ground for the termination of respondent-father's parental rights contained within the order terminating his parental rights entered on 19 March 2021. Upon appeal, this Court is governed by the following principles:

> We review the trial court's adjudication under N.C.G.S. § 7B-1111(a) to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law. Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal. Moreover, we review only those findings needed to sustain the trial court's adjudication.
>
> The issue of whether a trial court's findings of fact support its conclusions of law is reviewed de novo. However, an adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. Therefore, if this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds.

*In re B.J.H.*, 378 N.C. 524, 2021-NCSC-103, ¶ 11 (quoting *In re J.S.*, 374 N.C. 811, 814–815 (2020) (extraneity omitted).

¶ 9        Being cognizant of both respondent-father's challenge to each of the grounds adjudicated to exist by the trial court and the settled rule that "the determination of the existence of any statutory ground which is duly supported is sufficient to sustain a termination order," *Id.* at ¶ 12, we begin by reviewing the trial court's adjudication under N.C.G.S. § 7B-1111(a)(6), which allows for the termination of parental rights if

> the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C.G.S. § 7B-1111(a)(6). The ground of dependency requires that the petitioner show by clear, cogent, and convincing evidence that (1) the parent lacks the capacity to provide proper care and supervision of the juvenile such that the juvenile meets the definition of a dependent juvenile as found in N.C.G.S. § 7B-101(9), (2) "there is a reasonable probability that such incapacity will continue for the foreseeable future," and (3) "the parent lacks an appropriate child care arrangement." *In re Z.G.J.*, 378 N.C. 500, 511, 2021-NCSC-102 ¶ 31.

¶ 10        Here, the trial court entered the following relevant findings of fact in its 19

March 2021 order terminating respondent-father's parental rights:

> 79. [Respondent-father] reported to [DSS], as was found by the Court at Adjudication, that he receives SSI for "mental retardation, ADHD, and bipolar disorder."
>
> 80. [Respondent-father] has mental health conditions which include Bipolar Disorder and Attention Deficit Hyperactivity Disorder. [Respondent-father] has also been diagnosed with Unspecified Intellectual Disability.
>
> 81. [Respondent-father] has severe cognitive deficits, with an IQ of 61, and due to his deficits in reasoning, problem solving, planning, abstract thinking, and judgment, he is a vulnerable person.
>
> 82. There is no evidence presented that [respondent-father's] cognitive defects and abilities as described herein are expected to change.
>
> . . .
>
> 86. Testimony from the Respondent Mother, the Social Worker, and the Guardian ad Litem was consistent that [respondent-father] lacks the ability to independently care for the minor children.
>
> 87. Based upon all of the foregoing, [respondent-father] is unable to provide appropriate care and supervision for the minor children's needs, this incapacity is expected to continue for the foreseeable future, and he lacks an appropriate alternative child-care arrangement, such that the minor children are dependent juveniles within the meaning of [N.C.G.S. § 7B-101(9)].
>
> 88. . . . [Respondent-father] is not able to provide the care and supervision that the minor children require.

¶ 11    Respondent-father's sole argument in his exception to the trial court's finding of the ground of dependency is that "the trial court's findings of fact and conclusions

that [respondent-father's] mental illness rendered him incapable of parenting his children at the time of the termination hearing was [sic] not supported by the competent evidence." While respondent-father expressly challenges only Finding of Fact 86, Finding of Fact 87 is also implicitly challenged by its inclusion of the trial court's ultimate finding as to respondent-father's ability to parent. All other findings of the trial court are unchallenged by respondent-father regarding the ground of dependency. These unchallenged findings are therefore "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019).

¶ 12        In support of his specific contention, respondent-father admits that the DSS social worker testified that respondent-father had not demonstrated to DSS his ability to parent, but argues that the social worker's testimony also established that respondent-father had exercised all of his scheduled visitations with the children during which he demonstrated safe parenting skills. Respondent-father further argues that the trial court's findings concerning his incapacity to parent could not be supported by the testimony of the children's Guardian ad Litem because, while the Guardian ad Litem testified that respondent-father was incapable of parenting, the Guardian ad Litem did not observe any of the visitations or review the DSS record of the visitations.

¶ 13        Respondent-father's acknowledgement of the evidence offered by the social

worker and Guardian ad Litem regarding their respective observations that respondent-father was incapable of parenting, when juxtaposed against more favorable testimony regarding other aspects of respondent-father's displayed parenting skills, illustrate that the question posed to us in this regard is not whether the trial court's findings of fact were supported by clear, cogent, and convincing evidence, but whether the trial court assigned the proper weight and credibility to the evidence before it. The assignment of weight and evaluation of the credibility of the evidence resides solely within the purview of the trial court, and the trial court's factual determinations which are supported by clear, cogent, and convincing evidence, including the testimony of the social worker and Guardian ad Litem in the case at bar, are binding on appeal "notwithstanding evidence to the contrary." *In re J.R.F.*, 2022-NCSC-5, ¶ 34.

¶ 14 Respondent-father also notes that the testimony of the children's mother could not support the trial court's findings related to his inability to parent because, at the termination of parental rights hearing, the mother abruptly exited the hearing by withdrawing from the virtual meeting prior to being subjected to cross-examination by respondent-father's counsel. We agree with respondent-father that the mother's opinion about his ability to parent should not factor into the trial court's determination of the existence of grounds in light of the adversarial nature of the *adjudicatory phase* of termination of parental rights proceedings. *Compare In re R.D.*,

376 N.C. 244, 253 (2020) ("While it is axiomatic that cross-examination of an adverse witness is an essential right in adversarial proceedings, the dispositional stage of a termination proceeding is not adversarial." (citation omitted)), *with* N.C.G.S. § 7B-1109(f) (2021) ("The rules of evidence in civil cases shall apply" at the adjudication phase.). Concomitantly, we do not find the mother's opinion or the trial court's consideration of her opinion to be particularly salient on the point of respondent-father's incapacity to parent, and "we limit our review to those challenged findings that are necessary to support the trial court's determination that respondent-father's parental rights should be terminated." *In re N.G.*, 374 N.C. 891, 900 (2020). The portion of the trial court's Finding of Fact 86 which refers to testimony of the mother is thereby discarded in our analysis of the trial court's order. *Id.* at 901 (disregarding portion of finding of fact not supported by the evidence.).

¶ 15 Even after addressing respondent-father's challenges to the trial court's adjudication of grounds to terminate his parental rights under N.C.G.S. § 7B-1111(a)(6), there remain ample unchallenged findings of fact supported by clear, cogent, and convincing evidence to support a finding of dependency. The trial court found that respondent-father suffered from severe mental infirmities which demonstrably impaired his ability to reason, plan, exercise judgment, think abstractly, and problem solve. Respondent-father had a tenuous grasp of the concept of dates as evidenced by his provision of random, inaccurate birthdates of his children

and his initial testimony that the children were last in his care years prior to James's birth. Respondent-father testified that "it shouldn't be that long" before he would be able to complete the parenting capacity evaluation and parenting classes despite being incarcerated awaiting trial on felony charges with an unknown release date. The trial court considered such evidence and incorporated its determinations regarding the information in a manner which is supported by the record and appropriately assessed by the trial court.

¶ 16     Contrary to respondent-father's contention that the trial court's findings were "not based on the evidence at the time of the termination proceeding" because the trial court did not consider his participation in mental health and parenting services prior to his incarceration, the trial court's uncontested findings establish that, at the time of the termination hearing, respondent-father suffered from debilitating mental infirmities which rendered him incapable of providing care for James and Amy such that the juveniles were dependent as defined by N.C.G.S. § 7B-101(9). The trial court's further uncontested findings establish that the juveniles "lack[ed] an appropriate alternative child-care arrangement" and that respondent-father's "incapacity is expected to continue for the foreseeable future." Therefore, the trial court's order contains sufficient findings of fact, which are in turn supported by clear, cogent, and convincing evidence, to support the trial court's ultimate determination that grounds existed under N.C.G.S. § 7B-1111(a)(6) to terminate respondent-father's

parental rights. Because we conclude that at least one of the alleged grounds for the termination of respondent-father's parental rights was supported by findings of fact based on clear, cogent, and convincing evidence, we need not address respondent-father's further challenges regarding the remaining grounds of abuse or neglect. *In re B.J.H.*, 378 N.C. at 529.

### III.    Conclusion

¶ 17          The trial court order terminating respondent-father's parental rights as to James and Amy reflected the trial court's finding that respondent-father's incapacity to parent rendered the juveniles dependent as defined by N.C.G.S. § 7B-101(9), and that there was a reasonable probability that the incapability would continue for the foreseeable future. This finding was supported by other uncontested findings of fact or by clear, cogent, and convincing evidence on the record. Respondent-father does not appeal the trial court's dispositional conclusion that termination of respondent-father's parental rights would serve the best interests of the children. We therefore determine that there is no error in the trial court's order entered on 19 March 2021 which terminated the parental rights of respondent-father.

AFFIRMED.