IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-140

 No. 69A21

 Filed 5 November 2021

 IN THE MATTER OF: M.E.S.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 20

 November 2020 by Judge Monica M. Bousman in District Court, Wake County. This

 matter was calendared for argument in the Supreme Court on 30 September 2021

 but determined on the record and brief without oral argument pursuant to Rule 30(f)

 of the North Carolina Rules of Appellate Procedure.

 No brief for petitioner-appellee mother.

 Mary McCullers Reece for respondent-appellant father.

 NEWBY, Chief Justice.

¶1 Respondent, the father of M.E.S. (Molly),1 appeals from the trial court’s order

 terminating his parental rights. After careful review, we affirm.

¶2 Molly was born on 7 March 2009. Though respondent and petitioner, Molly’s

 mother, lived together for two brief periods shortly after Molly’s birth, they were

 never married. Despite respondent’s presence, petitioner alone attended to Molly’s

 needs during this time.

 1 A pseudonym is used in this opinion to protect the juvenile’s identity and for ease of

 reading.
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

¶3 On 18 February 2015, a permanent child custody and support order

 (Permanent Order) was entered in District Court, Union County. That court found

 petitioner “has been primarily responsible for attending to [Molly]’s educational,

 nutritional, housing, shelter, food and healthcare needs” since Molly’s birth. On the

 other hand, it found respondent “suffered from a substance abuse addiction” and

 “anger control issues.” It also found “[t]hat [respondent] has engaged in varying and

 different episodes of domestic violence against [petitioner] both prior to [petitioner’s]

 pregnancy and during [petitioner’s] pregnancy” with Molly. Specifically, on one

 occasion respondent “took a hammer to [petitioner’s] car, and was so impaired at the

 time that he did not remember doing that until the next morning” when petitioner

 reminded him. On another occasion, respondent “made [petitioner] get out of an

 automobile when they were traveling together, and made her walk” in the rain.

¶4 Based on these findings, that court concluded petitioner was “a fit and proper

 person to have the permanent care, custody and control of the minor child.” It also

 concluded respondent was “not a fit and proper person to have visitation with the

 minor child at th[at] time” because of domestic violence, anger control, and substance

 abuse issues. Accordingly, the court awarded physical and legal custody of Molly to

 petitioner. Moreover, it ordered

 [t]hat if [respondent] wishes visitation with the minor
 child, [respondent] shall have to come to Court and present
 evidence of anger control management skills, substance
 abuse assessment, and following through with treatment
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

 recommendations. If [respondent] can come to court and
 show these things, then the Court shall upon proper filing
 of a Motion to Modify, consider these issues amongst others
 about whether [respondent] should have visitation with
 [Molly].

 The court also ordered respondent to pay $300.34 per month in child support.

¶5 In 2016 respondent saw a therapist at Monarch Behavioral Health. After

 several sessions, the therapist recommended respondent attend the New Options for

 Violent Actions (NOVA) group therapy program offered in Mecklenburg County.

 Respondent attended and completed NOVA in 2016. Respondent also testified he had

 six or seven negative drug tests at the McLeod Center by 2018. At the termination

 hearing, respondent introduced into evidence negative results from an additional

 drug test that occurred on 16 September 2019.

¶6 Four years after the entry of the Permanent Order, on 31 May 2019, petitioner

 filed a petition to terminate respondent’s parental rights in District Court, Wake

 County. The petition alleged that respondent had “willfully and intentionally

 abandoned the minor child for at least six (6) consecutive months immediately

 preceding the filing of this petition and ha[d] forgone [sic] all his parental duties.” See

 N.C.G.S. § 7B-1111(a)(7) (2019) (willful abandonment of the juvenile for at least six

 consecutive months preceding the filing of the petition). The petition also alleged that

 respondent “willfully fail[ed] without justification to pay for any of the care, support,
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

 and education of the minor child.” See N.C.G.S. § 7B-1111(a)(4) (willful failure to pay

 for the care, support, and education of the juvenile pursuant to a custody agreement).

¶7 On 20 November 2020, the trial court entered an order determining that

 grounds existed to terminate respondent’s parental rights pursuant to, inter alia,

 N.C.G.S. § 7B-1111(a)(4) and (7).2 The trial court further concluded that it was in

 Molly’s best interests that respondent’s parental rights be terminated. Accordingly,

 the trial court terminated respondent’s parental rights. Respondent appeals.

¶8 On appeal respondent contends the trial court erred by concluding a ground

 existed to terminate his parental rights based on willful abandonment. Respondent

 argues the trial court’s findings of fact were not supported by clear, cogent, and

 convincing evidence and those findings do not support the conclusions of law.

 Respondent also argues he did not exhibit the requisite willful intent to abandon

 Molly. Finally, respondent argues the trial court improperly terminated his parental

 rights under N.C.G.S. § 7B-1111(a)(4).

 2 The trial court also stated it was terminating respondent’s parental rights under

 N.C.G.S. § 7B-1111(a)(1) (neglect). In the petition for termination, however, there was no
 language mirroring the statutory ground of neglect. Additionally, when asked during
 argument on respondent’s motion to dismiss whether the petition alleged any grounds other
 than N.C.G.S. § 7B-1111(a)(4) and (7), petitioner’s counsel responded, “No.” See In re B.L.H.,
 190 N.C. App. 142, 147, 660 S.E.2d 255, 257 (stating that “the factual allegations in the
 petition [must] give the respondent sufficient notice of the ground” for the trial court to
 terminate parental rights on that ground), aff’d per curiam, 362 N.C. 674, 669 S.E.2d 320
 (2008); N.C.G.S. § 7B-1104(6) (2019). Notably, respondent has not challenged this ground for
 termination in his brief to this Court. Nonetheless, because we hold the trial court properly
 terminated respondent’s parental rights under N.C.G.S. § 7B-1111(a)(7), we do not address
 this ground.
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

¶9 A termination of parental rights proceeding consists of an adjudicatory stage

 and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); In re Montgomery, 311

 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). The petitioner bears the burden at the

 adjudicatory stage of proving by “clear, cogent, and convincing evidence” the existence

 of one or more grounds for termination under subsection 7B-1111(a) of our General

 Statutes. N.C.G.S. § 7B-1109(f). We review a trial court’s adjudication “to determine

 whether the findings are supported by clear, cogent and convincing evidence and the

 findings support the conclusions of law.” In re Montgomery, 311 N.C. at 111, 316

 S.E.2d at 253 (citing In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982)).

 Unchallenged findings of fact “are deemed supported by competent evidence and are

 binding on appeal.” In re T.N.H., 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing

 Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). We review only

 those findings necessary to support the trial court’s conclusion that a ground existed

 to terminate parental rights. In re B.C.B., 374 N.C. 32, 38, 839 S.E.2d 748, 753 (2020)

 (citing In re T.N.H., 372 N.C. at 407, 831 S.E.2d at 58–59).

¶ 10 Here the trial court concluded that a ground existed to terminate respondent’s

 parental rights based on willful abandonment. A trial court may terminate parental

 rights when “[t]he parent has willfully abandoned the juvenile for at least six

 consecutive months immediately preceding the filing of the petition.” N.C.G.S.

 § 7B-1111(a)(7). In this case, the determinative six-month period is from 30
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

November 2018 to 31 May 2019. “[I]f a parent withholds his presence, his love, his

care, the opportunity to display filial affection, and wil[l]fully neglects to lend support

and maintenance, such parent relinquishes all parental claims and abandons the

child.” Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citing In re

Davison’s Adoption, 44 N.Y.S. 2d 763 (1943)). “As used in N.C.G.S. § 7B-1111(a)(7),

abandonment requires a ‘purposeful, deliberative and manifest willful determination

to forego all parental duties and relinquish all parental claims to [the child].’ ” In re

I.R.M.B., 377 N.C. 64, 2021-NCSC-27, ¶ 15 (alteration in original) (quoting In re

A.G.D., 374 N.C. 317, 319, 841 S.E.2d 238, 240 (2020)). “The existence of willful intent

‘is an integral part of abandonment’ and is determined according to the evidence

before the trial court.” Id. (quoting Pratt, 257 N.C. at 501, 126 S.E.2d at 608).

“[A]lthough the trial court may consider a parent’s conduct outside the six-month

window in evaluating a parent’s credibility and intentions, the ‘determinative’ period

for adjudicating willful abandonment is the six consecutive months preceding the

filing of the petition.” In re B.C.B., 374 N.C. at 36, 839 S.E.2d at 752 (quoting In re

N.D.A., 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019)). In support of its conclusion that

respondent willfully abandoned Molly, the trial court made the following findings of

fact:

 32. At no time since entry of the Permanent Order has a
 Motion to Modify been filed by either party in Union
 County District Court File No. 11CVD2655 and at no time
 has a subsequent order been issued regarding the custody
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

or child support of the minor child.

....

44. Respondent testified that between the entry of the
Permanent Order and the filing of the petition he
purchased gifts for the minor child but did not deliver them
to her.

45. Respondent’s mother delivered gifts from herself to the
child on several occasions to the [p]etitioner’s parents’
house. The last delivery of any gifts was in 2016. The gifts
were not substantial nor regular.

46. Prior to the petition being filed, [r]espondent not once
sent a card to the minor child. The Permanent Order did
not order no contact or include any language preventing
the [r]espondent from sending gifts or cards yet he chose
not to do so.

47. Prior to the Petition being filed, [r]espondent last saw
the minor child in June 2012. This was prior to the Union
County Court ordering no visitation in the Permanent
Order.

48. Although the Permanent Order failed to establish
visitation with the minor child, the court order put in place
steps for the [r]espondent to take should he desire
visitation with the minor child.

49. At no time since entry of the Permanent Order has
[r]espondent filed a Motion to Modify or made any filings
in the Union County custody action.

....

55. Petitioner changed her phone number in or around
2012 and did not inform the [r]espondent.

56. Petitioner had two email addresses at the time she and
[r]espondent stopped communicating with one another.
Respondent knew both of those email addresses which are
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

still active email addresses. Petitioner did not receive any
emails or inquiries from [r]espondent since at least 2013.
She did not block [r]espondent from her emails.
Respondent testified he assumed the email addresses were
no longer used but admitted he did not send any emails.

....

58. Respondent has had knowledge of [p]etitioner’s
step-father’s address but has failed to send any cards or
gifts for the child to that address.

....

60. Although the Permanent Order did not prevent
[r]espondent from having contact with the minor child by
means other than visitation, at no point since June 2012
until the date petition filed [sic] had the [r]espondent sent
a gift, a card, a message through a third party, or any other
form of communication to the child.

61. Since June 2012 until the date the Petition was filed,
[r]espondent at no time emailed [p]etitioner, called
[p]etitioner, or contacted [p]etitioner through a third party.
Respondent had sufficient information regarding an
attempt to contact other family of [p]etitioner as well as the
email addresses of [p]etitioner that could have
demonstrated his love, care, and affection for the child.
Respondent made no such attempts. His testimony that he
“loves her”, “misses her”, and “thinks about her everyday”
has not been demonstrated in any of his actions since he
last saw her. His lack of attempts to contact [p]etitioner or
her family members demonstrates that he willfully
withheld his love, care, and affection from the child and
that he abandoned the child.

....

64. Respondent has willfully abandoned the juvenile for at
least six consecutive months immediately preceding the
filling of this petition or motion in that he has failed to have
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

 any visitation or to seek visitation through the existing
 custody action, made no attempt to have any contact with
 the minor child, or make any inquiries regarding her
 welfare since June 2012.

¶ 11 Respondent argues that portions of findings of fact 46, 58, 60, 61, and 64 are

 unsupported by the evidence. Specifically, respondent argues the trial court erred by

 finding that he “never tried to send Molly gifts, even by way of third parties.” We

 review each finding in turn.

¶ 12 Respondent argues finding of fact 46 is erroneous because it states respondent

 “chose not to” send Molly a gift. At the termination hearing, respondent and his

 mother testified that respondent gave his mother gifts to send to Molly through

 petitioner’s family members. The evidence, however, does not demonstrate whether

 these gifts were from respondent or respondent’s mother. The trial court found the

 gifts delivered to Molly were from respondent’s mother. In doing so, the trial court

 weighed the evidence and determined that the testimony stating the gifts were from

 respondent was not credible. See In re C.A.H., 375 N.C. 750, 759, 850 S.E.2d 921, 927

 (2020) (noting that the trial court, given its unique position, is the proper entity to

 make credibility determinations). Therefore, the trial court did not err and finding of

 fact 46 is binding on appeal.

¶ 13 Respondent argues findings of fact 58 and 60 are also erroneous because those

 findings state he did not send a gift to Molly. We reject these challenges for the

 reasons stated above. Finally, finding of fact 61 concerns respondent’s attempts to
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

 contact petitioner or petitioner’s family members about Molly; this finding does not

 mention whether respondent sent a gift. Respondent makes no challenge relevant to

 finding of fact 61. Thus, finding of fact 61 is binding on appeal.3 See In re T.N.H., 372

 N.C. at 407, 831 S.E.2d at 58 (“Findings of fact not challenged by respondent are

 deemed supported by competent evidence and are binding on appeal.” (citing

 Koufman, 330 N.C. at 97, 408 S.E.2d at 731)).

¶ 14 Respondent next argues finding of fact 54 was not supported by clear, cogent,

 and convincing evidence. Respondent challenges finding of fact 54 “to the extent [it]

 might be construed as an affirmative finding that [respondent] had the financial

 means or the legal ability to succeed in modifying” the Permanent Order. Respondent,

 however, does not challenge finding of fact 32 or 49, which both state that neither

 party has filed a motion to modify the child custody order. Therefore, these findings

 are binding on appeal. See id. Regardless of whether respondent had the financial

 means or legal ability to succeed, these findings are sufficient to establish respondent

 did not attempt to seek visitation with Molly during the relevant six-month

 3 Respondent also challenges finding of fact 64 to the extent it found respondent never

 sent a gift to Molly. In finding of fact 64, the trial court found respondent willfully abandoned
 Molly because he failed to have or seek visitation and made no attempt to contact Molly or
 inquire about her welfare since June of 2012. Whether respondent willfully abandoned Molly
 is a conclusion of law. See In re S.C.L.R., 2021-NCSC-101, ¶ 27 (treating determination of
 willful abandonment as a conclusion of law). As such, we include this finding under our
 discussion of respondent’s challenge to the trial court’s conclusion that respondent willfully
 abandoned Molly.
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

 timeframe.4

¶ 15 The trial court’s findings of fact support its conclusion that respondent’s

 parental rights were subject to termination based on willful abandonment. Here the

 findings show that respondent last saw Molly in June of 2012. In the Permanent

 Order, entered almost three years later in 2015, respondent was not awarded

 visitation due to domestic violence, anger control, and substance abuse issues. That

 order, however, also outlined the steps respondent could take to receive visitation.

 Throughout 2016, respondent took some steps to address these issues, including

 individual and group therapy. By 2018, however, respondent stopped addressing

 these issues. Despite taking these steps, respondent never attempted legal action to

 modify the Permanent Order to allow visitation.

¶ 16 Additionally, the trial court found the Permanent Order “did not prevent

 [r]espondent from having contact with the minor child,” and respondent knew how to

 contact petitioner or her family such that he “could have demonstrated his love, care,

 and affection for the child.” Nonetheless, respondent did not attempt to contact

 petitioner or Molly, nor did he send Molly a gift or card. Moreover, from 2018 until

 the petition was filed, respondent never paid more than a third of his monthly

 4 Respondent also argues the trial court erred by considering evidence outside the

 record by “ ‘Googling’ [petitioner]’s address to see whether [respondent] could have located
 [petitioner] to make direct contact with Molly.” Even assuming this extraneous research was
 improper, as discussed, the findings as a whole support the trial court’s decision to terminate
 respondent’s parental rights under N.C.G.S. § 7B-1111(a)(7).
 IN RE M.E.S.

 2021-NCSC-140

 Opinion of the Court

 child-support obligation. Because these findings considered as a whole show

 respondent willfully abandoned Molly, the trial court properly terminated

 respondent’s parental rights pursuant to N.C.G.S. § 7B-1111(a)(7).

¶ 17 Respondent also argues the trial court erred in terminating his rights under

 N.C.G.S. § 7B-1111(a)(4). Because we conclude the trial court properly terminated

 respondent’s parental rights based on N.C.G.S. § 7B-1111(a)(7), we do not address

 respondent’s remaining arguments. See In re Moore, 306 N.C. at 404, 293 S.E.2d at

 132 (holding that an appealed order should be affirmed when any one of the grounds

 found by the trial court is supported by findings of fact based on clear, cogent, and

 convincing evidence); see also N.C.G.S. § 7B-1111(a) (“The court may terminate the

 parental rights upon a finding of one or more [grounds for termination.]”). Thus, we

 affirm the trial court’s order terminating respondent’s parental rights.

 AFFIRMED.