IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-4

No. 504A20

Filed 11 February 2022

IN THE MATTER OF: G.D.C.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 29 September 2020 by Judge Resson O. Faircloth in District Court, Johnston County. This matter was calendared for argument in the Supreme Court on 22 December 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Holland & O'Connor, PLLC, by Jennifer S. O'Connor, for petitioner-appellee Johnston County Department of Social Services; and Mobley Law Office, P.A., by Marie H. Mobley, for appellee Guardian ad Litem.*

*J. Thomas Diepenbrock for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1     Respondent appeals from an order terminating her parental rights in her minor child G.D.C.C. (Galena).[1] After careful review, we hold that the trial court's determination that there was a likelihood of future neglect if Galena was returned to

---

[1] Pseudonyms are used in this opinion to protect the juveniles' identities and for ease of reading.

respondent's care was supported by the findings of fact. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

## I.     Factual and Procedural Background

On 20 June 2016, the Johnston County Department of Social Services (DSS) obtained nonsecure custody of five-year-old Galena and filed a juvenile petition alleging that she was a neglected and dependent juvenile, which included the following factual allegations. Galena's older sister, Nadina,[2] had disclosed multiple accounts of sexual abuse by Galena's father.[3] Respondent, after learning of the allegations, still took Galena to spend the night at her father's house, disregarding Nadina's claims of sexual abuse. Respondent directed Nadina not to say anything during a child medical exam and tried to have Nadina call her father to apologize to him because he was upset. A child medical exam indicated Nadina was probably sexually abused, and her father failed a polygraph test. Respondent attempted to discredit Nadina by calling her a liar and accusing her of making up the allegations. Nadina was hospitalized on several occasions due to suicidal and homicidal ideations.

Following a hearing, the trial court entered an order on 13 December 2016 adjudicating Galena to be a neglected and dependent juvenile. In a separate disposition order entered the same day, the trial court ordered that Galena remain in

---

[2] Nadina is not part of this appeal.
[3] Galena's father is not a party to this appeal.

DSS custody and that respondent cooperate with DSS and follow all recommendations.

DSS developed an Out-of-Home Family Services Agreement with respondent to address parenting education, individual counseling services, nonoffender services, and maintaining a safe and appropriate home. In a 4 January 2017 order, following a permanency-planning hearing, the trial court found that respondent had started but failed to follow through with individual counseling, had not begun parenting classes, and had not completed a psychological evaluation. By October 2017, respondent had completed parenting classes, but she continued to lack an understanding of her children's mental health and behavioral issues as well as the sexual abuse Nadina had suffered. On 11 May 2018, the trial court entered a permanency-planning order finding that respondent had participated in individual counseling on only a sporadic basis and "continue[d] to lack an understanding of her role and responsibility as to the juveniles' current situation and removal from her care."

On 17 April 2019, the trial court entered an amended permanency-planning order finding that respondent had completed an updated psychological evaluation in April 2018. The doctor who evaluated respondent reported that despite months of therapy and psychoeducation regarding how a nonoffending parent should respond to a child victim, respondent continued to fail to believe Nadina's report of sexual

abuse. Further, the trial court found that respondent failed to take responsibility for the emotional and psychological damage that her actions—such as trying to discredit Nadina and calling her a liar—had caused Nadina. The trial court found that although respondent had cooperated in part with her case plan, she had not demonstrated an ability to apply what she learned in her classes and would be unable to protect her children.

¶ 6 The trial court's findings in the next permanency-planning order entered on 31 May 2019 were consistent with those in the 17 April 2019 order. The trial court also found that respondent had stopped attending therapy. The trial court, therefore, changed the primary permanent plan to adoption, with a secondary permanent plan of custody/guardianship with a court-approved caretaker.

¶ 7 On 11 July 2019, DSS filed a petition to terminate respondent's parental rights in Galena alleging that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6). Following a termination-of-parental-rights hearing that occurred over the course of several days, the trial court entered an order on 29 September 2020 concluding that grounds existed to terminate respondent's parental rights in Galena pursuant to each of the grounds DSS had alleged. The trial court also concluded that it was in Galena's best interests that respondent's parental rights be terminated. As

a result, the trial court terminated respondent's parental rights. Respondent timely appealed.[4]

## II.     Analysis

On appeal, respondent challenges the trial court's adjudication of the existence of grounds to terminate her parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6). The North Carolina Juvenile Code sets out a two-step process for termination of parental rights: an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109 to -1110 (2021). At the adjudicatory stage, the trial court takes evidence, finds facts, and adjudicates the existence or nonexistence of the grounds for termination set forth in N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e). If the trial court adjudicates that one or more grounds exist, the trial court then proceeds to the dispositional stage where it determines whether termination of parental rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

## A. Standard of Review

---

[4] Respondent's notice of appeal may have been defective as it cited N.C.G.S. § 7B-1001(a1)(2), the statutory provision regarding appeals of orders eliminating reunification as a permanent plan; stated that respondent "hereby gives Notice of Appeal to the North Carolina Supreme Court of the Order eliminating reunification;" and was titled "NOTICE OF APPEAL Order Eliminating Reunification [TPR]." However, the notice did reference the termination-of-parental-rights order, stating that it was appealing "[t]he order terminating [respondent's] rights [that] was filed on September 29, 2020." Since neither the guardian ad litem nor DSS has challenged respondent's notice of appeal as defective, "we elect, in the exercise of our discretion, to treat the record on appeal as a petition seeking the issuance of a writ of certiorari and to allow that petition . . . in order to reach the merits of [respondent's] challenge to the trial court's termination orders." *In re S.G.S.*, 2021-NCSC-156, ¶ 8 n.6.

¶ 9      We review a trial court's adjudication pursuant to N.C.G.S. § 7B-1111 to determine whether the findings are supported by clear, cogent, and convincing evidence and whether the findings support the conclusions of law. *In re E.H.P.*, 372 N.C. 388, 392 (2019). On appeal, this Court reviews "only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407 (2019). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). Further, "[f]indings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. at 407. We review the trial court's conclusions of law de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

**B. Neglect**

¶ 10      A trial court may terminate parental rights if it concludes the parent has neglected the juvenile within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1) (2021). As defined in pertinent part by N.C.G.S. § 7B-101, a neglected juvenile is one "whose parent . . . [d]oes not provide proper care, supervision, or discipline . . . [or c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2021).

> In some circumstances, the trial court may terminate a
> parent's rights based on neglect that is currently occurring

at the time of the termination hearing. However, such a showing is not required if, as in this case, the child is not in the parent's custody at the time of the termination hearing. Instead, the trial court looks to evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect[—]as well as any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect. The determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding. After weighing this evidence, the trial court may find that neglect exists as a ground for termination if it concludes the evidence demonstrates a likelihood of future neglect by the parent.

*In re M.J.B. III*, 377 N.C. 328, 2021-NCSC-50, ¶ 9 (cleaned up) (emphasis omitted).

¶ 11 In the present case, DSS obtained nonsecure custody of Galena on 20 June 2016, and Galena remained outside of respondent's custody for the entirety of the case. Thus, at the termination hearing, DSS needed to demonstrate both past neglect and a likelihood of future neglect by respondent. *See id.*

¶ 12 On appeal, respondent challenges the trial court's determination that there was a likelihood of future neglect if Galena was returned to respondent's care. Respondent does not contest the trial court's finding that Galena was neglected in the past and does not challenge any factual findings in the termination order. Instead, respondent argues that the findings of fact do not support a determination that there was likelihood of future neglect because many, if not most, of the findings do not address respondent's fitness to care for Galena at the time of the termination hearing. While respondent acknowledges that some of the findings do relate to her, she

contends that they simply note her completion of the case plan and do not support a determination that there was a likelihood of future neglect. We disagree.

¶ 13　　In the termination-of-parental-rights order, the trial court made the following findings, none of which respondent challenges: Nadina was sexually abused by her father; respondent has refused to believe Nadina's claims of sexual abuse by her father; respondent, by not believing Nadina's claims, has caused emotional and psychological damage to Nadina; respondent continued to contend that Nadina's self-harming behavior of cutting herself was only to get attention; throughout the entirety of the case, respondent attempted to discredit Nadina by calling her a liar and indicating that Nadina was making up the sexual-abuse allegations; respondent consistently failed to acknowledge her children's special needs; respondent indicated she would not provide her children their prescribed medications if she felt that they did not need them; respondent had expressed at past hearings that she did not know whether or not Galena should be around her father; respondent stopped attending therapy in September 2018; and respondent lacked insight into the issues that led to DSS involvement and her role and responsibility in contributing to the situation.

¶ 14　　Further, respondent failed to demonstrate any ability to recognize threats to Galena or an ability to protect Galena despite completing the case plan. While respondent had received training on how to respond to sexual abuse, she still testified that she "did not know" whether or not Galena should be around her father. Even

after years of involvement by DSS, the trial court, and numerous professionals, respondent failed to acknowledge any concern with her ability to parent and protect the children, failed to accept any responsibility for her actions, and continued to deny that she had done anything wrong. Accordingly, the trial court found that respondent had not demonstrated that she had gained knowledge from her case plan about how to resolve the issues at home, had showed no changes in the positive, and was not able to protect Galena from her father or any other male.

¶ 15    These unchallenged findings, which are binding on appeal, support the trial court's determination that there was a likelihood of future neglect if Galena were returned to respondent's care. Respondent's completion of her case plan does not preclude a determination that neglect is likely to reoccur. *See In re D.W.P.*, 373 N.C. 327, 339–40 (2020) (noting that the completion of a case plan did not contradict a determination that there was a likelihood of future neglect when respondent consistently failed to recognize the pattern of abuse her child had suffered). After years of professional, court, and DSS involvement, the issues that led to Galena's removal remained: respondent still could not protect her children from threats and thus could not provide them an environment that was not injurious to their welfare. Therefore, we hold that the trial court's determination that there was a probability of future neglect was supported by the findings of fact. As respondent has made no other challenges to the trial court's adjudication of grounds to terminate respondent's

parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), we find no error by the trial court as to this ground.

### III.   Conclusion

Since only one of the grounds outlined in N.C.G.S. § 7B-1111(a) is necessary to support a termination of parental rights, we decline to address respondent's arguments challenging the trial court's conclusion that grounds existed to terminate her parental rights under N.C.G.S. § 7B-1111(a)(2) and (6). Here, the trial court's determination that grounds existed to terminate respondent's parental rights for neglect pursuant to N.C.G.S. § 7B-1111(a)(1) was supported by the unchallenged findings of fact. Further, respondent does not challenge the trial court's determination that it was in Galena's best interests to terminate respondent's parental rights. Accordingly, we affirm the order terminating respondent's parental rights.

AFFIRMED.