IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-296

Filed 19 December 2023

Forsyth County, Nos. 18JT220, 18JT221

IN THE MATTER OF: K.N. K.N.

Appeal by defendant from judgment entered 21 December 2022 by Judge Theodore Kazakos in Forsyth County District Court. Heard in the Court of Appeals 1 November 2023.

> *Office of the Parent Defender, by Assistant Parent Defender Jacky L. Brammer, for the respondent-appellant.*
>
> *Forsyth County Department of Social Services, by Melissa Starr Livesay, for the petitioner-appellee.*
>
> *Manning Fulton & Skinner P.A., by Michael S. Harrell, for guardian ad litem.*

TYSON, Judge.

Respondent Mother ("Respondent") appeals from an order entered on 21 December 2022, which terminated her parental rights to two of her children. We affirm.

## I. Background

Respondent is the biological mother of Karen and Karl, who were twelve and eleven years old respectively when Respondent's parental rights were terminated on 21 December 2022. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of minors). Mother struggles to effectively manage her Bipolar Disorder condition,

which the court found has negatively impacted her ability to parent and her relationships with her children.

Karen and Karl were removed from Respondent's home on 8 November 2018. The order terminating Respondent's parental rights was entered 21 December 2022 and summarized incidents surrounding the initial investigation of Respondent by the Forsyth County Department of Social Services ("DSS"):

> FCDSS received a Child Protective Services Report on April 26, 2018 alleging the inappropriate discipline of the minor child [Karen].
> On July 12, 2018, FCDSS received a second report after [Karen] was seen running from the home in her underwear bleeding from the head.
> On July 12, 2018, an FCDSS Social Worker interviewed [Karen], [Karl], and their sibling [Matthew]. The children reported that [Respondent] had beaten them with a phone charger as punishment for [Matthew] having eaten all the cookies. [Karen] reported that [Respondent] had hit her in the face, arm, and back, punched her in the lip, and thrown her against a wall. [Karen] stated that [Respondent] had turned the shower on hot and was going to make her get in so [Respondent] could strike her while the water was running. [Karen] reported this was not the first time she and her siblings had been spanked while in the shower. [Karen] ran from the home to avoid this punishment. [Karl] and [Matthew] stated they saw [Karen] running out the door because she did not want to get beat [sic] in the hot shower. [Karl] stated a lady saw [Respondent] beating [Karen] and contacted law enforcement. [Karl] and [Matthew] stated [Respondent] had kicked[,] smacked, punched, and dragged [Karen] on the ground by the foot back to the apartment. [Karl] and [Matthew] told [Respondent] they ate the cookies, and [Respondent] assaulted them with the phone charger chord [sic] as a result.
> The Social Worker observed injuries on all three

children, to include welts and broken skin on the backs of all three children, welts on [Karen]'s arms and chest and bleeding marks, and welts on [Karl]'s back and chest as well as old/healed marks on his back.

On July 13, 2018, an FCDSS Social Worker spoke with [Respondent], who stated that her medication for Bipolar Disorder was not getting her in the right place mentally and leaves her very tired. [Respondent] admitted that she physically beat and assaulted [Karen], [Karl], and [Matthew] and had been criminally charged with three counts of misdemeanor child abuse.

In August 2018, [Respondent] was referred to In Home Services. [Respondent] was asked to comply with Intensive In Home Services through Family Preservation Services, comply with mental health treatment through Monarch, and ensure that the children received trauma assessments for mental health therapy. [Respondent] failed to comply with Family Preservation Services, and the organization discontinued services and closed its case.

On November 8, 2018, [Respondent] was convicted of three counts of misdemeanor child abuse and incarcerated at the Forsyth County Jail. [Respondent] requested that the children be placed with a neighbor. However, that placement did not occur and [Respondent] did not have alternative child care arrangements for [Karl] or [Karen]. [Matthew]'s father picked the child up and took him to Erie, Pennsylvania.

The Mother had prior child protective services history dating back to 2015 for allegations of improper care and improper discipline.

At the time of the Adjudication, [Karen's and Karl's Father] was incarcerated through the Somerset, Pennsylvania Department of Corrections.

The first adjudication and disposition hearing was held on 1 February 2019, wherein the trial court adjudicated Karen and Karl as abused, neglected, and dependent juveniles, with the order entered on 1 March 2019. Respondent was required to complete the following tasks to achieve reunification with her children:

(1) "[c]omplete a Family Service Agreement and visitation plan with FCDSS," (2) "[c]omplete a Parenting Capacity Assessment/Psychological Evaluation and follow all recommendations[,]" (3) "[c]omplete parenting classes at [ ] Parenting Path, PACT, or another approved program[,]" (4) [o]btain and maintain stable housing[,]" and, (5) "[d]emonstrate the ability to meet the basic and therapeutic needs of the children."

Several permanency planning hearings were held between the initial adjudication and the hearing terminating Respondent's parental rights. Respondent completed the parenting assessment. Respondent's case plan also required her to complete the following recommendations, as were identified in the termination order:

> 29. The recommendations of the Respondent Mother's Parenting Capacity Evaluation which was completed on or about May 14, 2019 by Dr. Bennett, were adopted and ordered by the Court as part of [Respondent]'s case plan. The Respondent Mother was therefore also required to:
>
> a. Re-engage with Monarch, keep appointments as scheduled, and take medications as prescribed. [Respondent] was encouraged to contact Monarch as they have funding which allows them to treat individuals like [Respondent], who do not have insurance or financial resources.
>
> b. Work with a counselor to help her review and challenge her irrational and distorted thinking so that she can begin to stabilize her life. Dr. Bennett believed cognitive approaches including rational emotive therapy would be effective models for working with [Respondent].
>
> c. Participate in parenting classes to learn more appropriate skills to respond to her children in a manner that is less aggressive and more effective.

d. Work with FCDSS and others with the goal of stabilizing her environment in terms of housing and finances.

e. Work to expand her support network, which should include challenging some of her distorted beliefs about how she should never lean on anyone else.

f. Attend the COOL program to help manage her aggressive impulses.

g. Complete random drug testing, with no-shows or refusals being counted as positive tests.

30. As reflected by the Permanency Planning Hearing from June 12, 2020, the order from which was filed on July 6, 2020, the Court also required [Respondent] to participate in the WISH program and substance abuse treatment.

31. Additionally, following a Permanency Planning Hearing from a hearing occurring on December 12, 2020, January 6, 2021, and March 3, 2021, the order from which was the order entered April 15, 2021, the Court required the Respondent Mother to:

a. Engage in all of [Karen]'s treatment team meetings and provide information as requested by the team. However, there shall be no direct contact between [Respondent] and [Karen] unless [Karen]'s therapeutic providers determine it to be beneficial for the minor child.

b. Sign release of information forms that allow [Karen]'s therapeutic treatment team to obtain [Respondent]'s treatment records from WISH, Monarch, and COOL.

A Motion to Terminate Parental Rights was filed against Respondent on 16

June 2021, citing the grounds in N.C. Gen. Stat. § 7B-1111(a)(1), (a)(2), (a)(3), and (a)(6). Termination of parental rights hearings were held over four months on 18 July 2022, 1 August 2022, 1 September 2022, and 19 October 2022. The court made extensive findings of fact following the admission of numerous pieces of evidence and the testimony of several witnesses.

The trial court's order found the following: (1) Respondent was pregnant; (2) Respondent was "not receptive" to Cognitive Behavioral Therapy, as required by her case plan; (3) Respondent had terminated her treatment with her therapist; (4) Respondent had not consistently taken her Bipolar Disorder medication throughout the life of the case; (5) Respondent was "not currently taking mental health medication, and [wa]s unlikely to be able to do so for some period of time up to and after the baby's birth"; and (6) Respondent picked up her son, Matthew, from Pennsylvania, which was concerning because DSS' investigation in 2018 revealed Respondent had "allowed [Matthew] to take part in the over-discipline of [Karl] and [Karen] and that [Matthew] choked and beat up his sister [Karen]."

The court adopted several findings of fact from previous permanency planning orders, which were entered on 1 March 2019, 6 July 2020, 15 April 2021, 18 July 2021, and 18 July 2022. The court entered the final order terminating Respondent's parental rights on 21 December 2022.

Based upon the evidence presented at the termination of parental rights hearings and the incorporated findings and conclusions contained in the previous

permanency planning orders, Respondent's parental rights to Karen and Karl were terminated for abuse, neglect, and for leaving her children in custody for more than twelve months without making reasonable progress towards correcting the circumstances that caused the children's removal pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) (2021).

The trial court held termination of parental rights pursuant to the grounds in N.C. Gen. Stat. § 7B-1111(a)(3) and (a)(6) had not been adequately proven, and it dismissed those grounds as a basis to terminate Respondent's parental rights.

The trial court explained its reasoning in the following findings of fact:

> 120. Based upon a showing of clear, cogent, and convincing evidence, grounds have been proven to terminate the parental rights of the Respondent Mother [ ] in and to the minor children pursuant to NCGS § 7B-1111(a)(1), the ground of abuse. [Respondent] created a substantial risk of serious physical injury to the children by other than accidental means through the practice of "whooping" the children with cords in the running shower, which resulted in injuries including bleeding welts on the children's bodies. Further, [Respondent]'s conduct constituted cruel and grossly inappropriate procedures for the modification of the children's behavior.
>
> 121. Based upon a showing of clear, cogent, and convincing evidence, grounds have been proven to terminate the parental rights of the Respondent Mother [ ] in and to the minor children pursuant to NCGS § 7B-1111(a)(1), the ground of neglect. [Respondent]'s mental health was a contributing factor to the circumstances surrounding the children's removal and adjudication as abused and neglected juveniles. [Respondent] has not consistently engaged in mental health treatment during the 41 months since Disposition. She has been non-compliant with

mental health medication and [ ] cannot currently take her medication as prescribed. [Respondent] has expressed distrust of treatment providers and terminated a long-term therapeutic relationship with Ms. Connelly when Ms. Connelly sought to move forward in therapy. [Respondent] has recently voiced that she did not feel she had learned anything useful during her therapy. Based upon her demeanor during her testimony, [Respondent] either fails to appreciate the serious nature of her conduct in abusing and neglecting the children or she wishes to move on and regard this as all past while her children continue to struggle with the traumatic consequences of her actions. Additionally, [Respondent] has not achieved stability with regard to her household and overall circumstances. [Respondent] has suddenly returned her older son, [Matthew], to her home, is expecting a baby in the near future, and has a newly obtained house and job. Based upon all of the foregoing, the likelihood that the children would be neglected if returned to her care is high.

122. Based upon a showing of clear, cogent, and convincing evidence, grounds have been proven to terminate the parental rights of the Respondent Mother [ ] in and to the minor children pursuant to NCGS § 7B-1111(a)(2), the ground that she has willfully left the minor children in custody for more than 12 months without showing to the satisfaction of the Court that she has made reasonable progress towards correcting the circumstances that caused the children's removal. [Respondent] has participated to a degree in therapy, but when her therapist Ms. Connelly sought to progress in treatment, [Respondent] chose to terminate a 4-year therapeutic relationship. When [Respondent] was confronted by information she disliked in conversation with Social Worker Baker or others, she did not respond well. [Respondent] opted to terminate her involvement with WISH, despite her acknowledged use of marijuana at that time, because she did not trust the counselor. These facts show that [Respondent] may have engaged in services to a degree, but a meaningful change in the circumstances that caused or contributed to the children's removal has not occurred. [Respondent] has not

adequately prepared herself to meet the mental and emotional health needs of her children, nor has she created the stable living environment which has proven beneficial to both children.

The trial court also concluded: "Pursuant to NCGS § 7B-1110, it is in the best interests of the minor children that the parental rights of [ ] Respondent[ ] [Mother and Father] be terminated so that the minor children's primary permanent plan of adoption can move forward." Respondent filed a timely notice of appeal. Karen's and Karl's biological father, whose rights were also terminated, does not appeal the trial court's order. The order is final as it relates to his parental rights.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 7B-1001(a)(7) (2021).

## III.    Issues

Respondent challenges several findings of fact and argues those findings of fact are not supported by clear, cogent, and convincing evidence. She argues without those findings of fact, the trial court's termination of her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) cannot be supported by the remaining findings of fact.

Respondent lastly asserts the trial court abused its discretion by terminating her parental rights to Karen and Karl, because termination was not in either of their best interests.

## IV.    Challenged Findings of Fact

Respondent argues several findings of fact were not supported by, or are contrary to, the evidence presented at the hearing.  She challenges the findings of fact regarding: (1) the period of time Respondent was compliant versus noncompliant with her case plan from the time the children were taken away in 2018 to the hearings held in 2022; (2) Respondent's feelings and attitude towards therapy and her progress; (3) Respondent's compliance and diligence with taking the medication to treat her Bipolar Disorder; (4) Respondent's involvement with Karen's mental health treatment; (5) the validity of Mother's healthcare plan; (6) the description of Matthew's return to Respondent's home as "sudden"; (7) Respondent's reactions when confronted with information she disliked; (8) her decision to stop attending substance abuse classes given her negative drug screenings; and, (9) the trial court's concerns regarding Respondent's stability.

### A.  Standard of Review

"We review a trial court's adjudication [to terminate parental rights] under N.C.G.S. § 7B-1111 to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law."  *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (citation and quotation marks omitted).  "The trial court's supported findings are deemed conclusive even if the record contains evidence that would support a contrary finding."  *In re L.D.*, 380 N.C. 766, 770, 869 S.E.2d 667, 671 (2022) (citation and quotation marks omitted).

Unchallenged findings of fact are presumed to be supported by sufficient evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." (citations omitted)).

## B. Analysis

In a termination of parental rights hearing, "[t]he burden in such proceedings shall be upon the petitioner or movant and all findings of fact shall be based on clear, cogent, and convincing evidence." N.C. Gen. Stat. § 7B-1109(f) (2021). When a challenged finding of fact is not necessary to support a trial court's conclusions, those findings "need not be reviewed on appeal." *See In re C.J.*, 373 N.C. 260, 262, 837 S.E.2d 859, 860 (2020) (citation omitted).

Here, properly-admitted testimony and other relevant and substantial evidence in the record exists to support each of the legally-necessary findings of fact Respondent challenges on appeal. *In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52; *In re L.D.*, 380 N.C. at 770, 869 S.E.2d at 671. Respondent's arguments challenging several of the trial court's findings of facts are without merit.

Respondent also argues several of the findings of fact she challenges are based upon judicially-noticed facts from prior orders. Respondent relies upon the reasoning in *In re T.N.H.*, 372 N.C. 403, 831 S.E.2d 54 (2019), and argues judicially-noticed evidence may only support a finding of fact in a current order when it is supported by

new evidence received at the adjudicatory hearing.

While a trial court "may not rely *solely*" on judicially-noticed evidence from prior hearings or rely on evidence from "prior dispositional orders, which have a lower standard of proof[,]" a trial court may use testimony from former hearings to corroborate additional testimony received at the current adjudicatory hearing. *Id.* at 410, 831 S.E.2d at 60 (emphasis supplied) (citations omitted). A trial court "must receive some oral testimony at the hearing and make an independent determination regarding the evidence presented." *Id.* (citation omitted).

The trial court received additional testimony to corroborate the judicially-noticed facts and made an independent determination regarding the new evidence presented at the hearings. *Id.* at 410, 831 S.E.2d at 60-61 ("The trial court's findings of fact appear to be based, at least in part, on testimony provided at the hearing, sufficient to demonstrate that the trial court made an independent determination regarding the evidence presented. . . . [W]e conclude that respondent's argument is without merit."). Respondent's argument is overruled.

## V.  Termination of Parental Rights

"[A]n adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order. . . . [I]f this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (citations omitted).

## A.     Standard of Review

This Court reviews a trial court's adjudication of grounds to terminate parental

rights by examining "whether the court's findings of fact are supported by clear,

cogent[,] and convincing evidence and whether the findings support the conclusions

of law.  Any unchallenged findings are deemed supported by competent evidence and

are binding on appeal.  The trial court's conclusions of law are reviewed de novo." *In*

*re T.B.*, 380 N.C. 807, 812, 870 S.E.2d 119, 123 (2022) (quoting *In re Z.G.J.*, 378 N.C.

500, 508-09, 862 S.E.2d 180, 187 (2021)).

## B. Analysis

Our general statutes limit the grounds to terminate parental rights to a

specific set of statutorily-defined grounds.   N.C. Gen. Stat. § 7B-1111(a) (2021).

Under the second prong, a trial court may terminate parental rights after:

> The parent has willfully left the juvenile in foster care or
> placement outside the home for more than 12 months
> without showing to the satisfaction of the court that
> reasonable progress under the circumstances has been
> made in correcting those conditions which led to the
> removal of the juvenile.  No parental rights, however, shall
> be terminated for the sole reason that the parents are
> unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111(a)(2).

Our Supreme Court has outlined the analysis trial courts must perform before

terminating a parent's parental rights pursuant to this ground:

> Termination under this ground requires the trial court to
> perform a two-step analysis where it must determine by

clear, cogent, and convincing evidence whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, *and* (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020) (emphasis supplied) (citation omitted).

"[A] respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress . . . sufficient to warrant termination of parental rights under section 7B-1111(a)(2)." *In re J.W.*, 173 N.C. App. 450, 465-66, 619 S.E.2d 534, 545 (2005) (citation and internal quotation marks omitted). "Leaving a child in foster care or placement outside the home is willful when a parent has the ability to show reasonable progress, but is unwilling to make the effort." *In re A.J.P.*, 375 N.C. 516, 525, 849 S.E.2d 839, 848 (2020) (citation, internal quotation marks, and alterations omitted).

Our Supreme Court has stated:

> Parental compliance with a judicially adopted case plan is relevant in determining whether grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2). However, in order for a respondent's noncompliance with her case plan to support the termination of her parental rights, there must be a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the child's removal from the parental home.

*In re J.S.*, 374 N.C. at 815-16, 845 S.E.2d at 71 (citation, internal quotation marks, and alterations omitted).

The Court has further explained that compliance with case plan conditions are relevant, "provided that the objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile's removal from the parental home." *In re T.M.L.*, 377 N.C. 369, 379, 856 S.E.2d 785, 793 (2021) (citation and quotation marks omitted).

Here, Respondent's parental rights to Karen and Karl were terminated for failure to implement "meaningful change in the circumstances that caused or contributed to the children's removal" because she had "not adequately prepared herself to meet the mental and emotional health needs of her children, nor has she created the stable living environment which has proven beneficial to both children."

One of the biggest factors in the removal of Karen and Karl was Respondent's violence and actions toward the children due to her inability to manage her Bipolar Disorder condition and the negative ways her mental health condition caused her to find fault and discipline Karen and Karl. Respondent admitted she did not consistently take prescribed medication to treat or manage her Bipolar Disorder condition. During the termination for parental rights hearing, she further admitted she had ceased taking her Bipolar Disorder medication when she became pregnant.

Respondent failed to create and maintain a stable living environment for both

children without also actively treating and managing her behaviors resulting from her mental health condition. "[T]he objectives sought to be achieved by the case plan provision in question address issues that contributed to causing the problematic circumstances that led to the juvenile[s'] removal from the parental home." *Id.* (citation and quotation marks omitted). The trial court did not err by terminating Respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).

## VI.    Best Interests

Respondent argues the trial court abused its discretion by holding termination was in Karl's best interest, because Karl had expressed a desire to live with Respondent. She similarly argues termination was not in Karen's best interest. The trial court based its decision on Respondent's failure to participate in Karen's treatment. Respondent asserts Karen's placement in **forty foster homes** while in DSS custody demonstrates Karen's instability, and terminating Respondent's parental rights would not be helpful to Karen.

## A.  Standard of Review

"We review the trial court's dispositional findings of fact to determine whether they are supported by the evidence received during the termination hearing[.]" *In re S.C.C.*, 379 N.C. 303, 313, 864 S.E.2d 521, 528 (2021) (citation omitted). "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed for [an] abuse of discretion." *In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52 (citation omitted). "Under this standard, we defer to the trial court's decision unless it is

manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *In re J.J.B.*, 374 N.C. 787, 791, 845 S.E.2d 1, 4 (2020) (citation and quotation marks omitted).

## B. Analysis

"If a trial court finds one or more grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it then proceeds to the dispositional stage, at which it determines whether terminating the parent's rights is in the juvenile's best interest." *In re A.E.*, 379 N.C. 177, 184, 864 S.E.2d 487, 495 (2021) (citations, quotation marks, and alterations omitted). N.C. Gen. Stat. § 7B-1110(a) provides a list of factors trial courts must consider, including the child's age, their likelihood of being adopted, whether termination will result in accomplishing the permanent plan established for the child, the child's bond with their parent, the child's bond with any proposed adoptive parent or guardian, and a catch-all provision encompassing any other relevant consideration.

The trial court addressed all statutory factors required by N.C. Gen. Stat. § 7B-1110(a). The trial court made findings about Karen and Karl's age and Respondent's inability to provide and maintain a safe and stable home. The trial court made findings regarding the likelihood of Karen and Karl being adopted and whether termination of Respondent's parental rights would accomplish their permanent plan:

> 125. The Court makes the following findings consistent with the requirements enumerated in NCGS § 7B-1110:

. . .

c. [Karl] has been in a stable placement with the same licensed foster family since November 2018, when he entered FCDSS custody. This family has expressed commitment to [Karl] and a desire to adopt him. Both FCDSS and the GAL regard it as likely that [Karl] will be adopted if he is legally free. The likelihood that [Karl] will be adopted is high.

d. [Karen] has lacked a stable placement and has frequently required increases in therapeutic care, including periodic hospitalizations. [Karen] has clearly shared with her GAL that she wishes to have a family, and that she wants that family to include her and an older married couple. [Karen] has shown the ability to form a bond and attachment with a former foster family, those fosters being an older couple. The former foster family has continued to maintain contact with [Karen] during her current placement in a residential treatment setting. FCDSS and the GAL are hopeful that, with changes in [Karen]'s medication and continued therapy, this can be a potential adoptive home. While the immediate adoption of [Karen] is unlikely, she wishes to have a family and has shown an ability to bond, and therefore adoption is possible.

e. The current primary plan for both children is the plan of adoption, and termination of parental rights will aid with the accomplishment of that plan.

The court also made the following findings regarding Karen's and Karl's relationship with Respondent:

g. [Karl] has a bond with his Mother, [Respondent]. This bond, as described by the GAL and the Social Worker, is a "fun bond" associated with having fun within the context of the safety and structure provided in supervised visitation. [Karl] has

repeatedly expressed a desire to remain in the home and care of his foster parents. [Karl] made a recent statement, after learning about [Respondent]'s current pregnancy, that he wanted to live with his Mother. However, this also happened around a time [Karl] was experiencing frustration with the rules and limitations of his foster home. Since that time, he has also stated he wished to remain with his foster parents. While the Court finds a bond exists between [Karl] and [Respondent], it is more accurately described as a bond of friendship or kinship than a parent-child bond.

. . .

i. [Karen] does not have a bond or connection with [Respondent]. [Karen] has made statements that she loves her Mother [Respondent] and forgives her Mother, but has been consistent in stating that she does not want to have a relationship with her Mother or return to [Respondent]'s care.

Respondent has failed to show the trial court abused its discretion by holding termination of her parental rights was in Karen's and Karl's best interests. N.C. Gen. Stat. § 7B-1110(a). *See also In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52. Her argument is without merit.

## VII.    Conclusion

Clear, cogent, and convincing evidence supports each of the legally relevant and necessary findings of fact Respondent challenged on appeal. N.C. Gen. Stat. § 7B-1109(f); *In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52; *In re L.D.*, 380 N.C. at 770, 869 S.E.2d at 671.; *In re C.J.*, 373 N.C. at 262, 837 S.E.2d at 860.

The trial court received additional testimony to corroborate the judicially-noticed facts from prior orders and made independent determinations regarding the new evidence presented. *In re T.N.H.*, 372 N.C. at 410, 831 S.E.2d at 60-61.

Respondent's failure to acknowledge, adequately address, and manage her behaviors toward the children resulting from her Bipolar Disorder condition led to Karen's and Karl's removal from her home. The trial court found Respondent had been provided many opportunities and extensions to address these conditions and did not err by terminating Respondent's parental rights for her willful failure to make reasonable progress toward her case plan objectives. These objectives relate the reasons for the children's removal to Respondent's lack of treatment and management of her mental health disorder. *In re T.M.L.*, 377 N.C. at 379, 856 S.E.2d at 793.

If one ground for the termination of Respondent's parental rights exists, we need not address the remaining two grounds. *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020).

The trial court properly addressed all statutory factors outlined in N.C. Gen. Stat. § 7B-1110(a). Respondent has not shown any abuse of discretion in its holding termination was in Karen's and Karl's best interest. *See In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52. The trial court's order is affirmed. *It is so ordered.*

AFFIRMED.

Judges MURPHY and COLLINS concur.